GLENN D. POMERANTZ (SBN 112503)
Glenn.Pomerantz@mto.com
MARK R. YOHALEM (SBN 243596)
Mark.Yohalem@mto.com
ROSE LEDA EHLER (SBN 296523)
Rose.Ehler@mto.com
USHA C. VANCE (SBN 309353)
Usha.Vance@mto.com
ANNE K. CONLEY (SBN 307952)
Anne.Conley@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION; COLUMBIA PICTURES INDUSTRIES, INC.; DISNEY ENTERPRISES, INC.; TWENTIETH CENTURY FOX FILM CORPORATION; WARNER BROS. ENTERTAINMENT INC.; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL TELEVISION LLC; and UNIVERSAL CONTENT PRODUCTIONS LLC,<br><br>              Plaintiffs,<br><br>        vs.<br><br>OMNIVERSE ONE WORLD TELEVISION, INC.; JASON M. DEMEO,<br><br>              Defendants. | Case No.  2:19-cv-01156<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiffs bring this Complaint against Omniverse One World Television, Inc. ("Omniverse") and Jason M. DeMeo ("DeMeo") (collectively, "Defendants") for direct and secondary copyright infringement under the Copyright Act (17 U.S.C. § 101 et seq.).  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).  Plaintiffs allege, on personal knowledge as to themselves and information and belief as to others, as follows:

## INTRODUCTION

1.    Defendant Jason DeMeo and his company, Omniverse, stream Plaintiffs' copyrighted movies and television shows ("Copyrighted Works") without authorization to an already large, and rapidly growing, number of end users. Defendants are not, however, just an infringing, consumer-facing service, akin to Dragon Box.[1]  Defendants operate at a higher level in the supply chain of infringing content—recruiting numerous downstream services like Dragon Box into the illicit market and providing them with access to unauthorized streams of copyrighted content.  Defendants function as a "hub" of sorts, with the enlisted downstream services as the "spokes."  Omniverse's offering is illegal, it is growing, and it undermines the legitimate market for licensed services.

2.    Plaintiffs license their Copyrighted Works to a number of legitimate online streaming services, including many well-known services such as Amazon Prime, Hulu TV, Sling, and DirecTV Now.  These services provide consumers access to premium live television channels via the Internet.  Plaintiffs' relationships with these legitimate licensed services are important, especially as more and more customers look to streaming as their chosen method of viewing movies and television programming.

---

[1]  In a case brought by Plaintiffs, Dragon Box recently agreed to a consent judgment and permanent injunction before this Court.  *See Netflix Studios, LLC v. Dragon Media Inc.*, CV 18-230-MWF(AS).

3.     Unfortunately, legitimate online streaming services must compete with a growing number of unauthorized services, similar to the "Blend TV" and "My TV Hub" services that were offered by Dragon Box.  Many of these illegal services rely on Omniverse for the copyrighted content that they offer.  Defendants apparently misrepresent to these downstream services that Omniverse has authority to "license" copyrighted motion picture and television programming content, including Plaintiffs' Copyrighted Works.  Omniverse has no such sub-licensing rights, and thus cannot authorize the downstream services to publicly perform Plaintiffs' Copyrighted Works to their retail customers.

4.     Defendants are not shy about their role—they brazenly brand their growing network of infringing services as being "Powered by Omniverse."



This slogan advertises Omniverse as an easy source for content and attracts more unauthorized downstream services to enter the market by advertising a ready source of infringing content.

5.     Defendants' unlawful conduct irreparably harms Plaintiffs, and that harm threatens to grow worse as the Omniverse network expands.  Defendants usurp

Plaintiffs' right to control their Copyrighted Works and to determine the terms on which they are licensed and the manner in which they are publicly performed. Defendants and their downstream services have an unfair competitive advantage over authorized services because they operate without regard to contractual obligations to which legitimate services agree. Defendants have already induced dozens of businesses and individuals to enter the illicit market and, unless Defendants are enjoined, more will surely follow. Plaintiffs bring this action to enforce their rights and cease the ongoing and worsening harm.

**THE PARTIES**

6.     Plaintiff Paramount Pictures Corporation ("Paramount") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California. Paramount owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

7.     Plaintiff Columbia Pictures Industries, Inc. ("Columbia") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Culver City, California. Columbia owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

8.     Plaintiff Disney Enterprises, Inc. ("Disney") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California. Disney owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

9.     Plaintiff Twentieth Century Fox Film Corporation ("Fox") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California. Fox owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

10.     Plaintiff Warner Bros. Entertainment Inc. ("Warner Bros.") is a corporation duly incorporated under the laws of the State of Delaware with its

principal place of business in Burbank, California.  Warner Bros. owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

11.    Plaintiff Universal City Studios Productions LLLP ("UCSP") is a limited liability limited partnership duly organized under the laws of the State of Delaware with its principal place of business in Universal City, California.  UCSP owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

12.    Plaintiff Universal Television LLC (formerly known as NBC Studios LLC) ("UT") is a limited liability company duly organized under the laws of the State of New York with its principal places of business in Universal City, California and New York, New York.  UT owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

13.    Plaintiff Universal Content Productions LLC (formerly known as Universal Cable Productions LLC and Universal Network Television, LLC) ("UCP") is a limited liability company duly organized under the laws of the State of Delaware with its principal place of business in Universal City, California.  UCP owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

14.    Plaintiffs have Certificates of Copyright Registration for their Copyrighted Works.  Exhibit A contains a representative list of titles, along with their registration numbers, as to which Defendants have directly infringed, contributed to infringement, and induced infringement, and continue to do so.

15.    Defendant Omniverse was incorporated under the laws of the state of Delaware, but that status expired as of March 1, 2017 for failure to comply with corporate filing obligations.  Omniverse was registered to do business in the state of Missouri by its President, DeMeo, with its principal place of business at 106 W. 11th Street, Suite 1700, Kansas City, MO 64105.  That entity was dissolved November 4, 2015.  Despite these lapsed registrations, Omniverse appears to be

actively doing business, now as an unregistered sole proprietorship.  Omniverse's website lists its current place of business as 107 W. 9th Street, Second Floor, Kansas City, MO 64105.

16.     Defendant DeMeo founded and was the CEO of Omniverse.  He was registered to do business in Missouri under the fictitious name "Omniverse One World Television," with the address of 233 SW Greenwich Drive, Lee's Summit, MO 64082.  That registration expired March 2, 2017.  DeMeo appears to reside in or around Kansas City, MO.  At all times relevant to this action, DeMeo has controlled Omniverse and upon information and belief is now its sole proprietor.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

18.     Defendants do business with California-based companies, such as Dragon Box and Silicon Dust, which offers the HDHomeRun service, discussed below, and together provide unauthorized streams of the Copyrighted Works to California residents.

19.     Defendants operate at least the following interactive websites www.omniversetv.com and www.jasondemeo.com, where Defendants promote Omniverse's unauthorized products and services, and invite potential customers to "contact" Defendant DeMeo.  These websites are available to and used by California residents.

20.      Defendants also knowingly and intentionally target Plaintiffs and the State of California through their unauthorized exploitation of the Copyrighted Works, thereby causing harm to Plaintiffs in the forum.

21.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1400(a).

## FACTUAL OVERVIEW

**Plaintiffs and Their Copyrighted Works**

22.     Plaintiffs and/or their affiliates produce and distribute some of the most popular and critically acclaimed movies and television programs in the world.

23.     Plaintiffs and/or their affiliates have invested (and continue to invest) substantial resources and effort each year to develop, produce, distribute, and publicly perform the Copyrighted Works.

24.     Plaintiffs and/or their affiliates own or hold the exclusive U.S. rights (among others) to reproduce, distribute, and publicly perform the Copyrighted Works, including by means of streaming those works over the Internet to the public.

25.     Plaintiffs authorize the distribution and public performance of the Copyrighted Works in various formats and through multiple distribution channels, including, by way of example:

> (a) for exhibition in theaters;
>
> (b) through cable and direct-to-home satellite services (including basic, premium, and "pay-per-view");
>
> (c) through authorized, licensed Internet video-on-demand services, including those operated by Amazon, Netflix, iTunes and Google Play, and VUDU;
>
> (d) through authorized, licensed  Internet or over-the-top ("OTT")[2] streaming services, including those offered by Hulu TV, Fubo TV, Sling TV, YouTube TV, and others;
>
> (e) for private home viewing on DVDs and Blu-ray discs; and
>
> (f) for broadcast television.

---

[2]  Over-the-top or "OTT" is an umbrella term for services that provide access to movies and television programs over the Internet, without requiring users to subscribe to a traditional cable or satellite pay-TV service.

26.     Plaintiffs have not authorized Defendants to copy or stream the Copyrighted Works, or to exercise any of Plaintiffs' other exclusive rights under the Copyright Act, 17 U.S.C. § 106.

**Omniverse Provides Unauthorized Streams of Copyrighted Works to Numerous Downstream Infringing Services**

27.     Defendants transmit streams of unauthorized movies and television programs—including the Copyrighted Works—to numerous downstream services. Those services, through either a streaming set-top box[3] or a software application, provide unauthorized streaming content directly to end consumers.  This violates Plaintiffs' exclusive public performance rights, 17 U.S.C. § 106(4).  Those services also offer "DVR" recording capabilities, violating Plaintiffs' exclusive reproduction rights, *id.* § 106(1).

**Omniverse Provides Copyrighted Works Under False Pretenses**

28.     Defendants market Omniverse's "benefits" as including "Top 70+ US TV Channels; 8 Premium Channels; DVR Available; [and] Up to 5 Simultaneous Streams."  According to Defendants' advertising, an end user ultimately receives "the ability to view their favorite TV channels" through a downstream service accessing Omniverse's stream.

29.     Defendants label their partner downstream services "powered by Omniverse."  What they mean is that Omniverse provides the infringing streams that are the core of the infringing business model.

---

[3]  A streaming set-top box is a hardware device that can allow a consumer to access Internet content streaming services.  The device can connect to a television set ("smart" or otherwise), and the consumer can stream content through a content streaming service via programs or "apps" on the device.

30.     Defendants encourage downstream services to rely on Omniverse as the source for content by, among other things, falsely representing that Omniverse is licensed to stream Plaintiffs' (and other copyright holders') Copyrighted Works and that Omniverse can sublicense those rights to downstream services.  For example, in a recently settled case against an infringing provider, *Netflix Studios, LLC v. Dragon Media Inc.*, CV 18-230-MWF(AS), the defendant in that case declared under penalty of perjury that Omniverse "allowed" the "My TV Hub / Milo / Blend TV" infringing services offered through his Dragon Box set-top box product to "stream [Plaintiffs'] copyrighted works" and that "the owner of Omni," Defendant DeMeo, "has represented that he has the licenses, but has declined to provide me and my counsel with a declaration or with a physical copy of the licenses."

31.     DeMeo made similar representations to Cord Cutters News, a website that covers developments in online streaming service offerings, among other areas.[4] The website pointed out that these "powered by Omniverse" services "seem to operate under different rules than most live TV streaming services" and asked "how

---

[4] "Are All of These New Live TV Streaming Services for Cord Cutting Legal? We Take a Look" (Oct. 13, 2018), available at https://www.cordcuttersnews.com/are-all-of-these-new-live-tv-streaming-services-for-cord-cutting-legal-we-take-a-look/.

legal this is." DeMeo reportedly answered that Omniverse had "acquired rights to some of these channels including the ability to stream outside by a contract that is only one of three such contracts in the United States." DeMeo refused to "give too many details" because "it could help others figure out how to track down the last two contracts like the one they use."

32. Plaintiffs have *not* granted licenses that permit Defendant DeMeo or Omniverse to stream the Copyrighted Works or sublicense streams to whatever counterparty they wish.

**"Powered by Omniverse" Services**

33. The Omniverse-affiliated downstream services include both (1) direct-to-consumer services; and (2) resellers or "white label" services.[5]

34. Many downstream services advertise that their streams are delivered "in cooperation with Omniverse" on their publicly available websites and brand their video players with Omniverse's name. Plaintiffs have already identified over a dozen such Omniverse "powered" downstream services.

35. Like Omniverse itself, these services falsely present themselves as legitimate and lawful. They reference major content distributors and entertainment companies—including Plaintiffs—in advertisements and prominently display those established companies' trademarks. These services charge subscription fees, further suggesting legitimacy to the customers.

36. These services are unauthorized and compete unfairly with licensed services. They offer premium content (including HBO, Showtime, and other channels) and technical features (such as DVR capabilities and simultaneous streaming to different devices), and compete directly with licensed services, but

---

[5] "White label" services refer to business-to-business products that allow the purchaser to buy everything necessary (software, hardware, etc.) to start its own downstream service selling to consumers. They are "white labels" because all the downstream service needs to add is the branding to the blank label.

often at a lower price.  Their unfair competitive advantage is attributed directly to Defendants, who provide the downstream services with streaming access to the Copyrighted Works without the licensing obligations that would ordinarily need to be met.

37.     In addition to Dragon Box's Blend TV and MyTVHub, examples of "powered by Omniverse" services include:  SkyStream TV, Flixon TV, and Silicon Dust's HDHomeRun Service.

### SkyStream TV

38.   SkyStream TV is an infringing direct-to-consumer Omniverse-affiliated service.  It offers the Copyrighted Works through live television streaming and recorded video-on-demand.  For $35 per month, it offers "70+ live channels," "50 Hours of Cloud DVR," and "7 Day Replay."

39.     SkyStream TV markets itself by comparing its offerings to legitimate streaming services— and boasts that it offers the lowest price and the most channels. These channels include those owned by Plaintiffs or their affiliates, such as Nickelodeon, BET, Comedy Central, FX, USA, TBS, and the Disney Channel, and numerous other channels that offer the Copyrighted Works.  Plaintiffs and their affiliates have never entered into any licensing agreement to permit SkyStream TV to stream these channels or the Copyrighted Works.



Case No. 2:19-cv-01156

40.     SkyStream also offers higher-end packages.  For $40 per month, it allows up to five simultaneous streams on the same account.  For $60 per month, SkyStream offers eight premium channels (HBO, HBO2, HBO Family, HBO Signature, Cinemax, MoreMax, Showtime and Showtime Extreme), which also offer the Copyrighted Works; for $65 per month, an end user can get up to five simultaneous streams of that premium content.



41.     SkyStream TV's website indicates that "SkyStream TV is delivered in Cooperation with Omniverse One World Television Inc."

42. When a consumer uses SkyStream TV's video player to watch content, the video player displays the branding "Powered by Omniverse." For example, the following image shows a viewer using SkyStream TV to search for and watch a recorded copy of Plaintiff Warner Bros.'s Copyrighted Work "Dunkirk" from the MoreMAX (CineMax) channel, and the video player states "Powered by Omniverse" in the bottom left corner.



***Flixon TV***

43. Another Omniverse-affiliated downstream service is Flixon TV. Flixon is both a reseller of "white label" services that offer the technical infrastructure to operate further downstream services and an infringing direct-to-consumer service. Flixon is "delivered in Cooperation with Omniverse One World Television Inc."

44.     Flixon encourages more downstream companies to join Omniverse's network.  Its website says, "Starting your own OTT Video streaming service has never been so easy.  The Go Flixon Reseller Opportunity is perfect for anyone ready to build a [sic] OTT streaming service even if you have no technical experience."  The website encourages the reader to "Start your own TV service with the Go Flixon / My TV Zone distributor opportunity.  Offer your customers over 75+ Live TV Channels, 50 Hours Cloud DVR, 7 Days Catchup, and Over 300+ Hours of Cinema Content."

45.     Flixon's website advertises, "No hidden fees, equipment rentals, or installation appointments!  Flixon TV gives you over 75 live US TV Channels, 7 days playback and 50 hours of DVR with watch on the go options!"  Like SkyStream TV, the subscription costs $35 per month.

46.     Flixon offers many premium channels owned by Plaintiffs or their affiliates, including FX, the Disney Channel, FreeForm, and USA, as well as others that also offer the Copyrighted Works.  Plaintiffs have not licensed Flixon to do so.

47.     Below is an example of what an end user sees when using the Flixon TV service, with "Powered by Omniverse" in the bottom left corner of the video player.  Flixon is providing a stream to Plaintiff Disney's Copyrighted Work "Pirates of the Caribbean: At World's End," recorded from the Showtime Extreme channel.



***Silicon Dust's HDHomeRun Service***

48.     Silicon Dust is a California-based company that operates an infringing direct-to-consumer streaming service called HDHomeRun that is "Powered by Omniverse."

49.     The service only works on Silicon Dust's proprietary set-top box devices.  If the user wants premium channels, the user must have a subscription to the HDHomeRun app, which runs on the set-top box device.

50.     HDHomeRun offers up to 45 premium channels, including AMC, FX, Disney Channel, Comedy Central, and Paramount Network, for $34.99 per month. DVR capabilities cost an additional $35 per year.  As with the others, HDHomeRun offers the Copyrighted Works through these channels without a license.

51.   An end user can then use the HDHomeRun service and device to play premium movies and television programming, including the Copyrighted Works, on the user's television.  For instance, below is what a viewer would see when using the HDHomeRun service to watch a live stream of "Law & Order: Special Victims Unit," that is playing on the USA channel.

52.   As with Flixon and SkyStream TV, Silicon Dust states that it is "[s]treaming in cooperation with Omniverse One World Television, Inc."



*     *     *

53.     SkyStream TV, Flixon TV, and Silicon Dust's HDHomeRun are just three examples of the many downstream services that obtain their infringing content from Defendants.  All of these services provide end users with streams of the Copyrighted Works for subscription fees.  And all of these services do so "in cooperation with" Omniverse and without a license from Plaintiffs.

**OmniBox**

54.     DeMeo and Omniverse formerly offered their own infringing direct-to-consumer service through the OmniBox, a streaming set-top box that Defendants marketed as the "Ultimate Alternative to Traditional Cable or Satellite."  It offered access to hundreds or thousands of live and on-demand channels for less than $25 per month, plus the one-time hardware cost of the OmniBox.



The Next Generation OmniBox TV 2015 ( Jason DeMeo )

55.     OmniBox demonstrates that Defendants are well aware of how these downstream services work and know the end result of their offering is the unauthorized and infringing streaming and copying of the Copyrighted Works.

**End Customers Receive Copyrighted Content Through Unauthorized and Infringing Omniverse-Affiliated Services**

56.     Customers use the downstream Omniverse-affiliated services for their intended and unquestionably infringing purposes—to obtain unauthorized access to streams and copies of the Copyrighted Works.

57.     Omniverse induces the downstream services into the market by offering unlicensed access to movies and television programming.  Downstream services, in turn, stream the unauthorized content to their end users infringing Plaintiffs' exclusive right to publicly perform the Copyrighted Works.

58.     Many of these downstream services also provide end users with DVR functionality and 7-day playback of previously aired movies and television programing.  The ability to copy that content and then watch it on-demand infringes Plaintiffs' exclusive right to reproduce the Copyrighted Works.

**Defendants' Mass Infringement of the Copyrighted Works Threatens Plaintiffs with Immediate and Irreparable Harm**

59.     The scope of Defendants' infringement grows with every downstream service that Defendants entice to enter the illegal market.  Those services are attracted by the opportunity to build a business through Defendants' "no strings attached" access to infringing content that they, in turn, can sell to end consumers at an unfair competitive advantage.

60.     Plaintiffs are harmed by this mass infringement.  Plaintiffs exercise their exclusive rights to license distributors and downstream services to develop and grow markets for their content, particularly the emerging digital markets.  Defendants' conduct usurps Plaintiffs' control over the exercise of these exclusive rights, interfering with those distribution strategies.

61.     Defendants also interfere with Plaintiffs' existing relationships with legitimate online services.  These legitimate services negotiate their licenses and abide by contractual restrictions.  Omniverse-affiliated services need not honor such

contractual restrictions because they circumvent the licensing process altogether. This unfair competition undermines the legitimate market for content streamed over the Internet, which are robust and growing parts of the Plaintiffs' businesses and an important option to many consumers.

62.     Defendants are also contributing to consumer confusion regarding what is lawful and what is not, as consumers may believe they can obtain premium access from illegitimate services.  They may see services like Flixon as equally legitimate to Netflix, Amazon, and others, when they are not.  This harms the market for legitimate digital services by drawing users away from Plaintiffs' licensees.

63.     For these reasons, Plaintiffs bring this action to protect their rights and end Defendants' wrongs.

**FIRST CAUSE OF ACTION**

**(Copyright Infringement, 17 U.S.C. § 106(4))**

64.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 63 inclusive.

65.     Defendants infringe Plaintiffs' exclusive right to make public performances of the Copyrighted Works, in violation of 17 U.S.C. § 106(4).

66.     Defendants do not have Plaintiffs' authorization to publicly perform the Copyrighted Works.

67.     Defendants' acts of infringement are willful, in disregard of and with indifference to Plaintiffs' rights.

68.     As a direct and proximate result of the infringements by Defendants, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

69.     Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per statutory award by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

70.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

71.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Works.  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

## SECOND CAUSE OF ACTION

### (Intentionally Inducing the Infringement of the Copyrighted Works, 17 U.S.C. § 106(1) & (4))

72.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 63 inclusive.

73.     To the extent the downstream services are exercising the exclusive reproduction and public performance right, defendants have actual knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.

74.     Defendants intentionally induce the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to reproduce and publicly perform their works.

75.     As intended and encouraged by Defendants, Omniverse-affiliated services directly infringe Plaintiffs' exclusive rights to publicly perform their Copyrighted Works by streaming Plaintiffs' Copyrighted Works to the public through their unauthorized services.

76.     Some of these services Omniverse-affiliated services also provide DVR capabilities and replay of previously live motion picture and television Copyrighted Works (e.g., "7-day replay").  Because these services lack authorization to have this content, their reproduction of it for purposes of the DVR or replay services infringes on Plaintiffs' exclusive right to reproduce their Copyrighted Works.

77.    Defendants induce the aforementioned acts of infringement by providing downstream Omniverse-affiliated services with unauthorized movies and television programs and falsely representing that it is licensed.

78.    Defendants' intentional inducement of the infringement of Plaintiffs' rights in each of the Copyrighted Works constitutes a separate and distinct act of infringement.

79.    Defendants' inducement of the infringement of the Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

80.    As a direct and proximate result of the infringement that Defendants intentionally induce, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

81.    Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per work infringed by virtue of Defendants' willful inducement of infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

82.    Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

83.    As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to induce infringement of Plaintiffs' rights in the Copyrighted Works.  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

### THIRD CAUSE OF ACTION

### (Contributory Copyright Infringement by Knowingly and Materially Contributing to the Infringement of the Copyrighted Works, 17 U.S.C. §§ 106(1) & (4))

84.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 63 inclusive.

85.     Defendants have actual or constructive knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.  Defendants knowingly and materially contribute to such infringing activity.

86.     Defendants knowingly and materially contribute to the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive rights to reproduce and publicly perform the Copyrighted Works.

87.     As intended and encouraged by Defendants, Omniverse-affiliated services directly infringe Plaintiffs' exclusive rights to publicly perform the Copyrighted Works by streaming the Copyrighted Works to the public through their unauthorized services.  Some of these service providers also infringe Plaintiffs' exclusive rights to reproduce the Copyrighted Works by offering DVR and playback capabilities that create copies of the unauthorized content.

88.     Defendants knowingly and materially contribute to the aforementioned act of infringement by supplying the unauthorized content to downstream services and falsely representing that it is licensed.

89.     Defendants' knowing and material contribution to the infringement of Plaintiffs' rights in each of the Copyrighted Works constitutes a separate and distinct act of infringement.

90.     Defendants' knowing and material contribution to the infringement of the Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

91.     As a direct and proximate result of the infringement to which Defendants knowingly and materially contribute, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

92.     Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per work infringed by virtue of Defendants' willful, knowing, and material contribution to infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

93.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

94.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to knowingly and materially contribute to the infringement of Plaintiffs' rights in the Copyrighted Works. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and for the following relief:

1.     For Plaintiffs' damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages; or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

2.     For preliminary and permanent injunctions (a) enjoining Defendants and their officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with them, from publicly performing or otherwise infringing in any manner (including without limitation by materially contributing to or intentionally inducing the infringement of) any right under copyright in any of the Copyrighted Works, including without limitation by publicly performing those Works, or by distributing any software or providing any service or device that does

or facilitates any of the foregoing acts; and (b) impounding hardware in Defendants' possession, custody, or control, and any and all documents or other records in Defendants' possession, custody, or control relating to Defendants' contribution to and inducement of the infringement of  the Copyrighted Works.

3.     For prejudgment interest according to law.

4.     For Plaintiffs' attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. § 505.

5.     For all such further and additional relief, in law or in equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues triable by jury.

DATED:   February 14, 2019          MUNGER, TOLLES & OLSON LLP

By:   */s/ Glenn D. Pomerantz*

GLENN D. POMERANTZ
Attorneys for Plaintiffs