1  GLENN D. POMERANTZ (SBN 112503)
   Glenn.Pomerantz@mto.com
2  MARK R. YOHALEM (SBN 243596)
   Mark.Yohalem@mto.com
3  ROSE LEDA EHLER (SBN 296523)
   Rose.Ehler@mto.com
4  USHA C. VANCE (SBN 309353)
   Usha.Vance@mto.com
5  ANNE K. CONLEY (SBN 307952)
   Anne.Conley@mto.com
6  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, Fiftieth Floor
7  Los Angeles, California 90071-3426
   Telephone:  (213) 683-9100
8  Facsimile:   (213) 687-3702

9  Attorneys for Plaintiffs

10              UNITED STATES DISTRICT COURT

11     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13

14 | PARAMOUNT PICTURES CORPORATION; COLUMBIA PICTURES INDUSTRIES, INC.; DISNEY ENTERPRISES, INC.; TWENTIETH CENTURY FOX FILM CORPORATION; WARNER BROS. ENTERTAINMENT INC.; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL TELEVISION LLC; and UNIVERSAL CONTENT PRODUCTIONS LLC, | Case No. 2:19-cv-01156-DMG-PJWx

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO SEVER, FOR A MORE DEFINITE STATEMENT, AND TO STRIKE**

Judge: Hon. Dolly M. Gee
Courtroom: 8C
Date:  May 24, 2019
Time: 9:30 am

Filed concurrently:
(1) Declaration of Glenn D. Pomerantz
(2) Plaintiffs' Request for Judicial Notice

                    Plaintiffs,

        vs.

OMNIVERSE ONE WORLD TELEVISION, INC.; JASON M. DEMEO,

                    Defendants.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................... 1

STATEMENT OF THE CASE ............................................................................... 2

    A.    Factual Allegations of the Complaint .................................................. 2

    B.    Omniverse's Contrary Factual Assertions Are Improper ..................... 3

ARGUMENT .......................................................................................................... 5

    A.    Omniverse's Request for a More Definite Pleading Should Be
           Denied Because the Complaint Intelligibly and Sufficiently
           States Plaintiffs' Copyright Infringement Claims ............................... 5

           1.    Legal Standard for Motion for More Definite Statement ............ 6

           2.    Omniverse's Request for a More Definite Statement Fails
                  Because It Raises Only Unsupported Allegations That Are
                  Not in the Complaint and Do Not Show that the Pleading
                  is Unintelligible ........................................................................... 6

    B.    The Complaint's References to Dragon Box May Not be
           Stricken Because They Are Neither "Scandalous" nor
           "Immaterial" ........................................................................................ 9

           1.    Legal Standard for Motion to Strike .......................................... 9

           2.    Accurately Noting that Omniverse Was in Business with
                  Dragon Box Is Neither Immaterial nor Scandalous ................. 10

    C.    Plaintiffs Are Properly Joined Because They All Allege the
           Same "Series of Transactions or Occurrences" of Infringement
           from Omniverse Providing Unauthorized Streams of Live
           Television Content—Including Plaintiffs' Copyrighted Works—
           to the Public ...................................................................................... 13

           1.    Legal Standard for Permissive Joinder ..................................... 13

           2.    Joinder of Plaintiffs Is Proper Here to Challenge a
                  "Systematic Pattern" of Infringement Caused by
                  Omniverse's Business Operations, and Omniverse Suffers
                  No Prejudice Thereby ................................................................ 14

CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ................................................................. 15

*Am. Broad. Cos. v. Aereo, Inc.*,
    573 U.S. 431 (2014) ............................................................................... 15

*Bureerong v. Uvawas*,
    922 F. Supp. 1450 (C.D. Cal. 1996) ............................................... 6, 9, 13

*Cellars v. Pac. Coast Packaging, Inc.*,
    189 F.R.D. 575 (N.D. Cal. 1999) ....................................................... 3, 8

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271 (9th Cir. 2000) ............................................................... 14

*Coughlin v. Rogers*,
    130 F.3d 1348 (9th Cir. 1997) .................................................. 3, 14, 15, 16

*Fox Television Stations, Inc. v. Aereokiller, LLC (FilmOn)*,
    851 F.3d 1002 (9th Cir. 2017) ............................................................... 15

*Holmes v. Electronic Document Processing, Inc.*,
    966 F. Supp. 2d 925 (N.D. Cal. 2013) ................................................... 10

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*,
    558 F.2d 914 (9th Cir. 1977) ................................................................. 13

*Mag Instrument, Inc. v. JS Prod., Inc.*,
    595 F. Supp. 2d 1102 (C.D. Cal. 2008) ................................................. 10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ............................................................................... 15

*Netflix Studios, LLC v. Dragon Media Inc.*,
    2:18-cv-00230-MWF-AS, ECF No. 49-2 (C.D. Cal. Dec. 27, 2018) ................. 12

*Netflix Studios, LLC v. Dragon Media Inc.*,
    2:18-cv-00230-MWF-AS, ECF No. 59 (C.D. Cal. Jan. 29, 2019) ....................... 11

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*On the Cheap LLC v. Does 1-5011*,
  280 F.R.D. 500 (N.D. Cal. 2011) ........................................................ 16

*Papagiannis v. Pontikis*,
  108 F.R.D. 177 (N.D. Ill. 1985) ..................................................... 16, 17

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ............................................................... 7

*S.E.C. v. Sands*,
  902 F. Supp. 1149 (C.D. Cal. 1995) .................................................. 3, 9

*Sagan v. Apple Computer, Inc.*,
  874 F. Supp. 1072 (C.D. Cal. 1994) .................................................. 6, 8

*San Bernardino Pub. Emps. Ass'n v. Stout*,
  946 F. Supp. 790 (C.D. Cal. 1996) ........................................... 6, 7, 9, 12

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ........................................................................... 7

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) ......................................................................... 14

*WB Music Corp. v. Futuretoday, Inc.*,
  No. 2:18-CV-01238-CAS-FFMx, 2018 WL 4156589
  (C.D. Cal. Aug. 28, 2018) .............................................................. 6, 8

*Worldwide Church of God v. Phila. Church of God, Inc.*,
  227 F.3d 1110 (9th Cir. 2000) ............................................................. 8

**FEDERAL STATUTES**

17 U.S.C. § 106 ......................................................................................... 1

Fed. R. Civ. P. 8 ........................................................................................ 6

Fed. R. Civ. P. 12 ............................................................................. 5, 6, 8, 9

Fed. R. Civ. P. 20 ............................................................... 13, 14, 15, 16, 17

**INTRODUCTION**

Plaintiffs are studios responsible for numerous popular and acclaimed films and television shows, such as Star Trek, The Karate Kid, Zootopia, Gravity, The Danish Girl, and Modern Family, to which Plaintiffs hold the copyrights. (Compl. ¶¶ 6–14, 22–26; Ex. A.) Many of Plaintiffs' works air on live television every day, which constitute public performances of the works under the Copyright Act. *See* 17 U.S.C. § 106(4). Plaintiffs license their exclusive right to publicly perform these works to television broadcasters and online streaming companies such as Amazon Prime and YouTube TV. (Compl. ¶ 2.)

Defendants Omniverse One World Television, Inc. and its CEO Jason DeMeo (collectively, "Omniverse") are directly infringing on Plaintiffs' exclusive rights to publicly perform their copyrighted works. Omniverse illegally streams live television programming—including Plaintiffs' works—over the internet through dozens of downstream services to thousands of end users, all without a license to do so from Plaintiffs. (Compl. ¶ 27.) Omniverse also induces downstream services to join this infringing television streaming marketplace and materially contributes to their direct infringement by providing these services with access to infringing content. (Compl. ¶¶ 29–30, 34–37, 57, 72–79, 84–91.) All of this misconduct is detailed in a 23-page complaint, complete with screenshots of infringement in action, filed by Plaintiffs to end Omniverse's wrongdoing.

Omniverse's meritless motion seeks to put off that end while Omniverse continues to illegally stream Plaintiffs' copyrighted content. As Omniverse knows quite well—and as is clear from the face of Plaintiffs' complaint—Plaintiffs have not authorized Omniverse to transmit streams of their copyrighted content to downstream services and end users. Instead of answering and confronting the allegations of Plaintiffs' complaint, Omniverse moves (1) to compel a more definite statement of the complaint, (2) to strike purportedly "scandalous" and "immaterial" allegations from the complaint, and (3) to sever seven of the eight Plaintiffs

involved in this action.  No authority supports any of these claims for relief, and courts have repeatedly warned that such motions must be viewed with skepticism because they are often brought for the purpose of delay.

Omniverse's motion fails first and foremost because it rests on allegations that are unsupported by any declaration or other evidence and are outside of (and contrary to) the complaint.  At this stage of litigation, the complaint must be taken as true, and at no stage of litigation may a party demand relief based on disputed facts without supporting its factual assertions with evidence.  Separately, the request for a more definite statement fails because the complaint sufficiently puts Omniverse on notice of Plaintiffs' copyright infringement claims.  The request to strike fails because the "Dragon Box" allegations that Omniverse seeks to strike are neither scandalous nor immaterial:  Dragon Box was Omniverse's business partner and has previously identified Omniverse as a provider of its infringing content.  And the request to sever fails because Plaintiffs have properly joined in one suit to allege their substantially identical claims, and Omniverse has not identified any prejudice from this joinder.  The Court should deny Omniverse's motion.

## STATEMENT OF THE CASE

### A.    Factual Allegations of the Complaint

Plaintiffs' complaint clearly alleges that Omniverse "transmit[s] streams of unauthorized movies and television programs—including [Plaintiffs'] Copyrighted Works—to numerous downstream services," which in turn "provide unauthorized streaming content direct to end consumers."  (Compl. ¶ 27.)  Omniverse also previously had its own direct-to-consumer live television streaming service via the "OmniBox."  (Compl. ¶¶ 54–55.)  All of this conduct is unauthorized because "Plaintiffs have *not* granted licenses that permit Defendant DeMeo or Omniverse to stream the Copyrighted Works."  (Compl. ¶¶ 26, 32.)

Plaintiffs have alleged that Omniverse's unauthorized streaming directly violates Plaintiffs' exclusive rights to publicly perform their copyrighted works.

(Compl. ¶¶ 27, 64–67.)  Further, Omniverse induces direct-to-consumer streaming services to enter the infringing streaming marketplace and materially contributes to their direct infringement by providing them with content streams.  (Compl. ¶¶ 29–30, 34–37, 57, 72–79, 84–91.)  These Omniverse-powered downstream services stream that infringing content—live television programming on channels owned by Plaintiffs and their affiliates, and on other channels that air Plaintiffs' copyrighted works—to customers.  (*See, e.g.*, Compl. ¶¶ 39, 46, 50.)

### B. Omniverse's Contrary Factual Assertions Are Improper

At this stage of the litigation, the allegations of the complaint must be taken as true, and the forms of relief that Omniverse is seeking must be assessed on the four corners of the complaint and relevant judicially noticeable materials.  *See, e.g.*, *Coughlin v. Rogers*, 130 F.3d 1348, 1350–51 (9th Cir. 1997) (motion to sever); *S.E.C. v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995) (motion to strike); *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999) (motion for a more definite statement).

Omniverse's motion upends this basic hornbook rule, for the motion rests almost entirely on Omniverse's claims that (1) a freewheeling, undisclosed, "long-standing" contract between DirecTV and an entity called Hovsat, Inc. somehow authorizes the streaming of Plaintiffs' works with "no limitations with regard to geographic markets, nor innovating with regard to delivery method" (Mot. at 1), and (2) Omniverse operates merely as "a marketing partner of" Hovsat (Mot. at 9).  Both of these claims directly contradict allegations in the complaint.  (*See, e.g.*, Compl. ¶¶ 27–37, 53–63.)  Thus, they cannot, as a matter of law, be a basis for granting the relief Omniverse seeks.

But what Omniverse is doing actually goes well beyond merely contradicting the complaint.  The allegations on which Omniverse's motion rests are based on zero supporting materials, let alone materials that could be judicially noticed.  The first two paragraphs of the motion's "Statement of Facts" are devoid of a single

citation.  (Mot. at 1.)  The motion does not attach the purported licensing agreement between DirecTV and Hovsat or supporting documentation for other factual assertions.  To be clear, attaching such evidence would itself have been improper because, at this stage of the litigation and given the relief Omniverse seeks, the complaint's allegations must be taken as true.  (*See supra* p. 3.)  And regardless, as explained below, the motion has no *legal* merits in addition to having no *factual* merits.  Nevertheless, the absence of evidence to support the factual allegations on which Omniverse's motion rests serves to underscore the motion's impropriety.[1]

Not only has Omniverse failed to support its complaint-contradicting "Statement of Facts" with evidence, it is interfering with the gathering of such evidence.  After filing the complaint, Plaintiffs requested that Omniverse provide specific evidence related to this case, including evidence showing any purported license that authorized Omniverse to stream Plaintiffs' copyrighted works. (Pomerantz Decl. ¶ 2.)  After delaying responding to Plaintiffs' requests for several weeks, Omniverse failed to provide any license that would allow it to stream Plaintiffs' copyrighted works.  (*Id.*)  And after the Court allowed the parties to serve stipulated early subpoenas on DirecTV and Hovsat, Omniverse has refused to provide Plaintiffs with the contact information for Hovsat's attorney, despite the fact that Omniverse's counsel had told Plaintiffs that he had been in contact with that attorney.  (*Id.* ¶¶ 3–4.)  Instead, Omniverse told Plaintiffs to directly contact

---

[1] Plaintiffs' criticism of Omniverse's reliance on unsupported factual assertions in its motion is not an invitation for Omniverse to sandbag Plaintiffs by attaching new, contested evidence to its reply.  Plaintiffs object to the introduction of any new evidence on reply.  The motion must be based only on the four corners of the pleadings.  (*See supra* p. 3.)

Hovsat's purported owner, Shant Hovnanian, who, according to Omniverse, is now in Armenia.[2]  (*Id.* ¶ 4.)

Thus, it is not merely that Omniverse is trying to derail this litigation with factual assertions contrary to the complaint and unsupported by evidence. Omniverse also is making clear that it has no desire for the *actual* facts about the purported DirecTV-Hovsat contract to come to light.  That is unsurprising because DirecTV, which has complied with the Court's subpoena, has no evidence of any contract resembling what Omniverse describes.  (*Id.* ¶ 3.)

The Court need not, and indeed cannot, consider Omniverse's bare assertions about its supposed relationship with Hovsat and Hovsat's supposed relationship with DirecTV.  Hovsat and DirecTV are irrelevant to a motion challenging the complaint, which makes no mention of Hovsat at all.  Regardless, whether considering Omniverse's improper factual assertions or not, Omniverse's motion fails on the legal merits, as set forth below.

## ARGUMENT

**A.  Omniverse's Request for a More Definite Pleading Should Be Denied Because the Complaint Intelligibly and Sufficiently States Plaintiffs' Copyright Infringement Claims**

Omniverse's motion asks the Court for a more definite statement under Federal Rule of Civil Procedure 12(e), claiming that it cannot frame a responsive pleading because it is not clear on whether "Plaintiffs are alleging Omniverse pirated the properties in question, or Omniverse's marketing activities have merely exceeded the scope [of] Hovsat's licensed rights, or both."  (Mot. at 6.) Omniverse's contention is meritless.

---

[2]  Hovnanian currently faces United States federal civil tax enforcement proceedings involving over $16 million in penalties, and the United States Government has not been able to serve him in that case.  (Pomerantz Decl. ¶ 4.)

**1.      Legal Standard for Motion for More Definite Statement**

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading … which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired."  Rule 12(e) motions "are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules.  Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted." *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) (citation omitted).  They can be used only "to attack *unintelligibility*, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her." *San Bernardino Pub. Emps. Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996) (emphasis added).  "Thus, a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996).

Further, the motion "must be considered in light of the liberal pleading standards of Rule 8(a) (a Complaint need only be a 'short and plain statement of the claim showing that the pleader is entitled to relief[.]')." *Id.* at 1462.  It is "improper when the 'defects complained of and the details desired' relate solely to affirmative defenses" because "affirmative defenses must be pleaded in the answer, not the complaint." *WB Music Corp. v. Futuretoday, Inc.*, No. 2:18-CV-01238-CAS-FFMx, 2018 WL 4156589, at *3 (C.D. Cal. Aug. 28, 2018) (citations omitted).

**2.      Omniverse's Request for a More Definite Statement Fails Because It Raises Only Unsupported Allegations That Are Not in the Complaint and Do Not Show that the Pleading is Unintelligible**

Plaintiffs' complaint contains sufficient allegations to satisfy the limited pleading requirements of Rule 8(a) and put Omniverse on notice of Plaintiffs'

claims.  *See San Bernardino Pub. Emps. Ass'n*, 946 F. Supp. at 804.  Plaintiffs have
brought three causes of action: direct copyright infringement; inducement; and
material contribution to copyright infringement.  (Compl. ¶¶ 64–94.)  Each is
intelligibly and sufficiently stated in the complaint.

The complaint alleges the necessary elements for a direct copyright
infringement action:  (1) Plaintiffs' ownership of copyrighted works and (2)
Omniverse's infringement of Plaintiffs' exclusive right to publicly perform those
works by transmitting streams of Plaintiffs' copyrighted works airing on live
television to the public through downstream internet streaming services.  (*E.g.*,
Compl. ¶¶ 14, 26–27, 29, 32, 53, 55; Ex. A.)  That is all Plaintiffs are required to
plead to put Omniverse on notice of their direct copyright infringement claims.  *See,
e.g.*, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984)
("Anyone who violates any of the exclusive rights of the copyright owner, that is,
anyone who trespasses into his exclusive domain by using or authorizing the use of
the copyrighted work in one of the five ways set forth in the statute, is an infringer
of the copyright." (internal quotation marks and citation omitted)).

Plaintiffs also have alleged that Omniverse induces others to enter the illegal
streaming market and materially contributes to their direct infringement by
providing downstream services with access to this infringing content.  (*E.g.*, Compl.
¶¶ 53, 57.)  Again, these allegations are sufficient to put Omniverse on notice of
Plaintiffs' secondary liability claims.  *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788, 795 (9th Cir. 2007).

Omniverse does not identify unintelligibility in Plaintiffs' complaint, and its
motion demonstrates that Omniverse knows exactly what this case is about: direct
and secondary copyright infringement claims.  (Mot. at 2.)  At most, Omniverse
seeks details about its own streaming operations.  For example, Omniverse asserts
that "Plaintiffs' Complaint does not allege Omniverse [is] streaming, linking, or
otherwise providing pirated copyrighted properties," and "Plaintiffs are accusing

Omniverse of piracy without stating facts alleging *how* Omniverse committed piracy." (Mot. at 4, 9.) But Plaintiffs allege throughout the complaint that Omniverse's streaming constitutes infringement because Omniverse lacks authorization to stream Plaintiffs' copyrighted works. (*E.g.*, Compl. ¶¶ 1, 4, 18, 27–30, 54–57, 64–71, 77, 88.) If by "piracy" Omniverse means copyright infringement, then that is amply pleaded. (*See* Compl. ¶¶ 64–94.) The technical details of Omniverse's illegal streaming operations will be established through discovery, as is proper under the Federal Rules. *See Sagan*, 874 F. Supp. at 1077. Requiring Plaintiffs to plead such details in the complaint would upend the federal notice-pleading system.

Rather than identifying fatal unintelligibility within the complaint, Omniverse seeks to introduce unsupported allegations regarding a third party, "Hovsat," that are outside the complaint. (*E.g.*, Mot at 1, 6.) The complaint contains no allegations whatsoever regarding Hovsat or indicating that Omniverse is a "marketer," much less that "Omniverse does not have the authorization to market Hovsat's licensed content." (Mot. at 1, 6.) Omniverse cannot show the complaint to be "unintelligible" based on allegations that are *not in the complaint*. *See Cellars*, 189 F.R.D. at 578 ("[T]he proper test in evaluating a motion under Rule 12(e) is whether *the complaint* provides the defendant with a sufficient basis to frame his responsive pleadings." (emphasis added) (citation omitted)). Omniverse's arguments are relevant, if at all, to an affirmative defense, which has nothing to do with the intelligibility of Plaintiffs' complaint. *See WB Music Corp.*, 2018 WL 4156589, at *3; *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000) (noting that a license is an affirmative defense to a copyright infringement claim). Therefore, the Court should deny Omniverse's request for a more definite statement.

**B.    The Complaint's References to Dragon Box May Not be Stricken Because They Are Neither "Scandalous" nor "Immaterial"**

Omniverse's motion also seeks to strike five references to Dragon Box in the complaint as "scandalous" and "immaterial."  (Mot. at 8–9 (citing Compl. ¶¶ 1, 1 n.1, 3, 30, 37).)  Omniverse claims that the five references are "immaterial and cast a derogatory light on Omniverse and prejudice Omniverse in further proceedings" because Dragon Box is "a known pirate of copyrighted broadcast content."  (Mot. at 2, 9.)  This claim is frivolous, given that, among other things, Omniverse does not challenge the complaint's allegation that "Defendants d[id] business with … Dragon Box … and together provide[d] unauthorized streams of the Copyrighted Works." (Compl. ¶ 18.)

### 1.    Legal Standard for Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Just as with the motion's 12(e) request for a more definite statement, "Rule 12(f) motions are generally 'disfavored' because they are 'often used as delaying tactics, and because of the limited importance of pleadings in federal practice.'"  *Bureerong*, 922 F. Supp. at 1478 (citation omitted).  And, also like the motion's 12(e) request, "[t]he grounds for the motion [to strike] must appear on the face of the pleading under attack or from matter which the court may judicially notice."  *Sands*, 902 F. Supp. at 1165.

Allegations are "immaterial" only if "it is clear that the matter to be stricken can have *no possible bearing* on the subject matter of the litigation."  *San Bernardino Pub. Emps. Ass'n*, 946 F. Supp. at 803 (emphasis added).  And allegations can be deemed "scandalous" only if they "cast a 'cruelly' derogatory light on a party or other person."  *Id.*  Further, "'[g]iven their disfavored status, courts often require "a showing of prejudice by the moving party" before granting

the requested relief.'"  *Mag Instrument, Inc. v. JS Prod., Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (citations omitted).

Courts apply these standards stringently.  For instance, in *Holmes v. Electronic Document Processing, Inc.*, the plaintiff's complaint accused the defendants—a legal service company—of providing "sewer service."  966 F. Supp. 2d 925, 928–29 (N.D. Cal. 2013).  The defendants moved to strike the term "sewer service" as scandalous and immaterial.  *Id.* at 938.  The court denied that motion, holding that such references did "not rise to the level of casting Defendants in a 'cruelly derogatory light' and thus were not 'scandalous.'"  *Id.*  Nor were the references "immaterial"; improper business practices could be relevant to the defendants' liability.  *Id.*  The court also found that the defendants had failed to establish any prejudice arising from the disparaging language.  *Id.*

### 2. Accurately Noting that Omniverse Was in Business with Dragon Box Is Neither Immaterial nor Scandalous

Omniverse argues that the complaint's references to and comparisons between it and Dragon Box are immaterial "because Dragon Box is a hardware device utilizing software to search and link pirated content and Omniverse is a marketing partner of a cable company."  (Mot. at 9.)  Omniverse also argues that the comparisons are scandalous "because comparing the two unlike entities damages Omniverse through guilt by (misplaced) association."  (*Id.*)  However, Omniverse has failed to show that the complaint's references are immaterial or scandalous.  None of the challenged allegations in the complaint cast Omniverse in a "cruelly derogatory light," and all are relevant to Plaintiffs' copyright infringement causes of action.  *See Holmes*, 966 F. Supp. 2d at 938.

To begin with, there is no misplaced association here:  The complaint alleges that Omniverse did business with Dragon Box, a fact that Omniverse does not dispute.  Tellingly, Omniverse does not seek to strike paragraph 18 of the complaint, which states that "Defendants do business with California-based companies, such as

1   Dragon Box . . . , and together provide unauthorized streams of the Copyrighted

2   Works to California residents." (Compl. ¶ 18.) The complaint's other five

3   references to Dragon Box, which Omniverse does seek to strike, all relate to this

4   undisputed business relationship. (*See* Compl. ¶¶ 1, 1 n.1, 3, 30, 37.)

5       It is wrong to suggest that references to this conceded business relationship

6   and comparisons of these business partners are somehow "cruelly derogatory" to

7   Omniverse. Plaintiffs have used no charged language to refer to Omniverse's

8   business operations. It is *Omniverse*, not Plaintiffs, who refer to Dragon Box as a

9   known "pirate" and characterize Dragon Box's applications as "known Dragon Box

10  pirating apps." (Mot. at 2, 8–9.) The complaint does not use the terms "pirate" or

11  "piracy" at all, and instead uses legally relevant terms to describe Omniverse's and

12  Dragon Box's copyright infringement. (*See* Compl. ¶¶ 1, 27-32; *see also* Trojan

13  Decl. ¶ 3, Ex. B (Judgment and Permanent Injunction, *Netflix Studios, LLC v.*

14  *Dragon Media Inc.*, 2:18-cv-00230-MWF-AS, ECF No. 59 (C.D. Cal. Jan. 29,

15  2019) (consent judgment adjudicating Dragon Box as having engaged in copyright

16  infringement)).)

17      Furthermore, Omniverse's arguments mischaracterize the complaint.

18  Omniverse claims that, "[i]n Paragraph 1 of Plaintiffs' Complaint, Plaintiffs allege

19  Omniverse is 'an infringing, consumer-facing service, akin to Dragon Box.'" (Mot.

20  at 9; *see also* Mot. at 6.) In fact, Omniverse has cropped out key context. Paragraph

21  1 actually states: "Defendants are ***not***, however, just an infringing, consumer-facing

22  service, akin to Dragon Box. Defendants operate at a higher level in the supply

23  chain of infringing content—recruiting numerous downstream services like Dragon

24  Box into the illicit market and providing them with access to unauthorized streams

25  of copyrighted content." (Compl. ¶ 1 (emphasis added) (footnote omitted).)

26  Plaintiffs do *not* allege that the two are the same. Omniverse sits above Dragon Box

27  in the technical scheme of infringing content distribution.

28

Nor do the complaint's allegations have "no possible bearing" on the subject matter of this litigation.  Indeed, the allegations are directly relevant to Plaintiffs' claims of copyright infringement.  Omniverse now concedes that they were in the streaming business with "a known pirate of copyrighted broadcast content"; that certainly is relevant to Omniverse's liability, and state of mind for damages.  (Mot. at 2.)  Further, since Dragon Box pointed to *Omniverse* as the source of this "known pirated content" in a publicly filed declaration sworn under penalty of perjury, such allegations in the complaint have "bearing on the subject matter of the litigation," namely, Omniverse's liability for providing infringing content.  *See San Bernardino Pub. Emps. Ass'n*, 946 F. Supp. at 803 (holding that "a motion to strike should not be granted unless it is clear that the matter to be stricken can have no possible bearing on the subject matter of the litigation"); *see also* Pomerantz Decl. ¶ 6, Ex. 1 (Christoforo Decl., *Netflix Studios, LLC v. Dragon Media Inc.*, 2:18-cv-00230-MWF-AS, ECF No. 49-2, at ¶¶ 3–4 (C.D. Cal. Dec. 27, 2018) (quoted in Compl. ¶ 30)).  Omniverse also says the applications that Dragon Box used to provide customers with live television programming are "known Dragon Box pirating apps." (Mot. at 9.)  References to these "known pirating" applications in the complaint are relevant to Omniverse's liability and potential damages because Omniverse was identified as the source of those applications' infringing content in Dragon Box's declaration.  (*See* Christoforo Decl., *supra*; Compl. ¶¶ 3, 30, 37.)

Omniverse also argues that because the technology involved in Dragon Box's and Omniverse's operations is different, the complaint's references to Dragon Box are immaterial.  (Mot. at 9.)  This rests on the same false premise that the complaint equates Omniverse and Dragon Box.  But even if an apples-to-apples comparison were required, and Omniverse cited no legal support for such a notion, the complaint also alleges that Omniverse previously offered the "OmniBox" hardware device with a direct-to-consumer television streaming service, similar to Dragon Box.  (*See* Compl. ¶¶ 54–55.)  This point of similarity with Dragon Box is relevant

to demonstrate that Omniverse is "well aware of how these downstream services work and know[s] the end result of [its] offering is the unauthorized and infringing streaming and copying of the Copyrighted Works." (Compl. ¶ 55.)

Moreover, Omniverse has not established any prejudice. Given "the limited importance of pleadings in federal practice," this request appears to be no more than a "delaying tactic[]." *See Bureerong*, 922 F. Supp. at 1478. It should be denied.

**C.    Plaintiffs Are Properly Joined Because They All Allege the Same "Series of Transactions or Occurrences" of Infringement from Omniverse Providing Unauthorized Streams of Live Television Content—Including Plaintiffs' Copyrighted Works—to the Public**

Lastly, Omniverse's motion seeks to sever Plaintiffs into eight separate lawsuits, arguing that Plaintiffs are improperly joined because Plaintiffs have failed "to state facts that arise from a common transaction, occurrence, or series of transactions [or occurrences]." (Mot. at 4.) Omniverse premises this argument on its claim that the complaint does not state facts "alleging *how* Omniverse committed piracy." (*Id.*) Omniverse asserts—without any citation—that "copyright infringement necessitates who, what, when, and where to establish facts arising out of the same transaction, occurrence, or series of transactions [or occurrences] suffered by all plaintiffs." (*Id.*) This request, too, is meritless.

### 1.    Legal Standard for Permissive Joinder

Joinder of plaintiffs is proper under Federal Rule of Civil Procedure 20 if "they assert *any* right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "*any* question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)-(B) (emphasis added). Permissive joinder of parties "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). "Under the rules, the impulse is toward entertaining the broadest

1  possible scope of action consistent with fairness to the parties; joinder of claims,

2  parties and remedies is strongly encouraged." *United Mine Workers of Am. v.*

3  *Gibbs*, 383 U.S. 715, 724 (1966).  "Rule 20 is designed to promote judicial

4  economy, and reduce inconvenience, delay, and added expense." *Coughlin*, 130

5  F.3d at 1351.

6      Courts apply a three-pronged test to determine whether the "broadest scope of

7  action" encompasses the joinder.  "The first prong, the 'same transaction'

8  requirement, refers to similarity in the factual background of a claim." *Id.* at 1350.

9  Claims can "arise out of a systematic pattern of events and, therefore, arise from the

10 same transaction or occurrence." *Id.*  For the second prong, when each plaintiff's

11 claim involves "different legal issues, standards, and procedures" that require

12 "personalized attention," there is no common question of law or fact.  *Id.* at 1351.

13 Finally, "a district court must examine whether permissive joinder would 'comport

14 with the principles of fundamental fairness' or would result in prejudice to either

15 side."  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000).

16          **2.    Joinder of Plaintiffs Is Proper Here to Challenge a**
                    **"Systematic Pattern" of Infringement Caused by**
17                  **Omniverse's Business Operations, and Omniverse Suffers No**
                    **Prejudice Thereby**
18

19      Omniverse's request to sever fails to demonstrate that Plaintiffs are

20 improperly joined or that Omniverse is prejudiced by the joinder.  The relief sought

21 would *create* "inconvenience, delay, and added expense," not eliminate it.

22      First, Plaintiffs have alleged that their claims arise out of the "same series of

23 transactions or occurrences," namely Omniverse's "systematic pattern" of copyright

24 infringement caused by their unauthorized online streaming business.  *See Coughlin*,

25 130 F.3d at 1350.  Many other mass infringement cases involving multiple

26

27

28

plaintiffs, such as *Grokster*, *Aereo*, *Napster*, *FilmOn*, and more,[3] have been brought to judgment based on similar allegations.  Plaintiffs' claims are all based on Omniverse transmitting public performances of their copyrighted content to the public without authorization by streaming live television content over the internet to consumers through downstream services.  (Compl. ¶¶ 27–63.)  These allegations are sufficient to state copyright infringement claims.  And while the line-up of Plaintiffs' copyrighted works playing on live television at any given time changes, the facts involved in Omniverse's unauthorized streaming of that television content remain the same.  This systematic pattern of infringement is constant as to all Plaintiffs, regardless of what works are at issue; the individual copyrighted works identified in Exhibit A to the complaint were merely exemplary.  (See Compl. ¶ 14; Ex. A.)  Thus, Plaintiffs have alleged "similarity in the factual background" of their claims because the operation of Omniverse's business is a "systematic pattern of events" resulting in a related series of infringement.  *See Coughlin*, 130 F.3d at 1350.

Second, Plaintiffs' claims also involve common questions of law and fact under Rule 20.  Plaintiffs have alleged the same three legal claims of infringement, inducement, and material contribution.  (Compl. ¶¶ 64–94.)  These claims will involve the same legal and factual questions regarding where Omniverse obtains its live television programming, how Omniverse's streaming operation works, and to whom Omniverse streams.  Omniverse's infringing actions are alleged to be uniform as to all Plaintiffs, regardless of the copyrighted works at issue.  Therefore, no "personalized attention" would predominate any of the common factual and legal issues related to Plaintiffs' claims.  *See Coughlin*, 130 F.3d at 1351.

---

[3]  *Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431 (2014); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005); *Fox Television Stations, Inc. v. Aereokiller, LLC* (*FilmOn*), 851 F.3d 1002 (9th Cir. 2017); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001).

Omniverse claims that it "would be fundamentally unfair" to have Omniverse "litigate multiple counts of piracy covering all eight plaintiffs and their respective properties and unique facts." (Mot. at 5.) But Omniverse has not identified *any* "unique facts" or legal issues that require "personalized attention" in order to resolve Plaintiffs' claims. And if the Court were to grant severance, Omniverse would have to litigate *eight separate lawsuits*, each with three causes of action for copyright infringement and secondary liability from eight plaintiffs, all involving the same evidence of Omniverse's business model and system of infringement. That would not be easier for Omniverse; it would be harder. Presumably, Omniverse hopes that the added inconvenience, delay, and expense caused to Plaintiffs would deter the suits from going forward, but severance exists to *eliminate* such factors, not exacerbate them. Under Rule 20 and the case law interpreting it, it is most fair and efficient to present Plaintiffs' substantially identical claims in one suit. This joinder promotes "judicial economy" and reduces the "inconvenience, delay, and added expense" inherent in duplicative litigation. *See Coughlin*, 130 F.3d at 1351.

Omniverse's cases do not provide otherwise. For example, *On the Cheap LLC v. Does 1-5011*, involved severance of over *five thousand* Doe defendants who allegedly had downloaded the same film from Bit Torrent. 280 F.R.D. 500, 501–03 (N.D. Cal. 2011). "[J]oining multiple Doe defendants was improper since downloading the same file did not mean that each of the defendants were engaged in the same transaction or occurrence." *Id.* at 502–03. Contrary to Omniverse's attempted comparison, Plaintiffs' claims involve Omniverse *streaming* their copyrighted works, not "downloading different copyrighted films and television shows." (Mot. at 5 (emphasis omitted).) Omniverse also cited *Papagiannis v. Pontikis*, where the court severed the plaintiffs because "[a]lthough the allegedly fraudulent scheme may have been the same as to both victims, face-to-face fraud (as contrasted for example with a securities prospectus misrepresentation) necessarily

1  requires individualized proof."  108 F.R.D. 177, 178–79 (N.D. Ill. 1985).  Unlike the

2  fraud claims in *Papagiannis*, Plaintiffs' copyright infringement claims do not

3  involve highly particularized questions and individualized proof for each Plaintiff's

4  claims.  At most, each Plaintiff will establish that it owns copyrighted works and

5  that Omniverse has transmitted those works to the public through its unauthorized

6  live television streaming business.

7       Because Plaintiffs' claims arise out of the same series of transactions and

8  occurrences and involve the same questions of fact and law, Plaintiffs are

9  permissibly joined under Rule 20.  Omniverse has not identified any legal reason to

10  sever, nor has it demonstrated that doing so would avoid undue prejudice or

11  effectuate the efficiency and convenience policies behind the rule.  Therefore, the

12  Court should deny Omniverse's request to sever.

13                               **CONCLUSION**

14       For the foregoing reasons, Plaintiffs respectfully request that the Court deny

15  all of the requests for relief in Omniverse's motion.  Moreover, given the

16  widespread recognition that motions such as Omniverse's are often brought purely

17  for delay, and given the lack of any merit to Omniverse's motion here, the Court

18  should deny the motion promptly and direct Omniverse to answer the complaint.

19

20  DATED:  May 3, 2019              MUNGER, TOLLES & OLSON LLP

21

22                                 By:  _____*/s/ Glenn D. Pomerantz*_____

23                                      GLENN D. POMERANTZ
                                        Attorneys for Plaintiffs

24

25

26

27

28