R. Joseph Trojan  CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA  90212
Telephone:   310-777-8399
Facsimile:    310-777-8348
Attorneys for Defendants,
OMNIVERSE ONE WORLD TELEVISION,
INC. and JASON M. DEMEO

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION; COLUMBIA PICTURES INDUSTRIES, INC.; DISNEY ENTERPRISES, INC.; TWENTIETH CENTURY FOX FILM CORPORATION; WARNER BROS ENTERTAINMENT, INC.; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL TELEVISION LLC; and UNIVERSAL CONTENT PRODUCTIONS LLC,<br><br>Plaintiffs,<br>v.<br>OMNIVERSE ONE WORLD TELEVISION, INC.; JASON M. DEMEO,<br><br>Defendants. | CASE NO. 2:19-cv-01156<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO SEVER, FOR A MORE DEFINITE STATEMENT, AND TO STRIKE**<br><br>**Hon. Dolly M. Gee**<br><br>Hearing Date:  May 24, 2019<br>Time: 9:30 a.m.<br>Courtroom: 8C |

Defendants Omniverse One World Television, Inc. and Jason M. Demeo (collectively, "Omniverse") submit this Reply to Plaintiffs' Opposition (DE #34) to Omniverse's Motion to Sever, for a More Definite Statement, and to Strike Scandalous and Immaterial Portions of the Complaint (DE #30).

## I. INTRODUCTION

Omniverse's motion to sever, for a more definite statement, and to strike should be granted because it serves the best interests of the Court to have the claims clearly defined so that the issues can be litigated efficiently and economically.

First, Plaintiffs must make a more definite statement because of the mishmash of unintelligible allegations in the Complaint creates too much uncertainty for Defendants to properly answer the Complaint. Plaintiffs argue that Complaint does not make reference to the agreement between Hovsat and DirecTV (the "Hovsat-DirectTV agreement"), but that is exactly what is alleged in the Complaint. For example, Plaintiffs allege that "Defendants encourage downstream services to rely on Omniverse as the source for content by, among other things, falsely representing that Omniverse is *licensed to stream* Plaintiffs'…Copyrighted Works" (Compl. ¶ 30 (emphasis added).) Omniverse cannot properly prepare its defenses not knowing if Plaintiffs are disputing the scope of the Hovsat-DirectTV agreement or alleging copyright infringement.

Secondly, Omniverse's motion to sever Plaintiffs' copyright claims should be granted because Plaintiffs have not alleged copyright claims arising out of the same transaction, occurrence, or series of transactions or occurrences. Since it is still unclear whether piracy is at issue, Plaintiffs' copyright allegations do not share a similarity in the factual background beyond stating Omniverse publicly performing the shared copyrights. The copyright claims involve eight Plaintiffs with varying libraries of copyrighted properties. There are unique questions of fact and law that affect the copyright claims, which Plaintiffs fail to address relating to how the material was copied. Although joinder is more convenient for Plaintiffs, joinder is

fundamentally unfair to Omniverse.

Third, the Court should also strike portions of the Complaint because the unnecessary and improper comparisons between Omniverse and Dragon Box are not only scandalous and immaterial, the comparisons profoundly muddy the issues for litigation. Plaintiffs justify the comparisons on the premise that there is a business relationship between Omniverse and Dragon Box, using a declaration from a wholly unrelated case involving different parties. A relationship between two companies is not a basis for equating them in the Complaint.

More importantly, Dragon Box has no possible bearing on the subject matter of the litigation with Omniverse. The only reason Plaintiffs repeatedly refer to Dragon Box to describe Omniverse's operations is to purposefully confuse the issues at hand. As Dragon Box has no relevance to the claims against Omniverse, Plaintiffs resort to arguing that Dragon Box is relevant to Omniverse's state of mind, but such an argument fails on its face because the two entities are entirely unrelated.

For the reasons stated, Omniverse's motion to sever, for a more definite statement, and to strike must be granted.

## II. ARGUMENTS
### A. The Complaint Should be More Definite

The Complaint is unintelligible because it is not "specific enough to apprise [Omniverse] of the substance of the claim asserted against [Omniverse]." *San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996). As is, Omniverse does not know whether it is (1) accused of piracy, or (2) it is accused of exceeding the scope of the distribution agreement that Hovsat has with DirecTV under which Omniverse engages in marketing, or (3) both. The framing of a proper defense is very different under each of these scenarios.

#### 1. The Complaint Refers to the Hovsat-DirecTV Agreement

Plaintiffs argue in their Opposition that "[t]he complaint contains no allegations whatsoever regarding Hovsat." (Opp. at p. 8.) While not literally

-2-

mentioned by name, the Complaint implicitly refers to the Hovsat-DirecTV agreement twice. Paragraph 30 of the Complaint implicitly refers to the Hovsat-DirecTV agreement as follows:

> Defendants encourage downstream services to rely on Omniverse as the source for content by, among other things, falsely representing that Omniverse is *licensed to stream* Plaintiffs' (and other copyright holders') Copyrighted Works and that Omniverse can sublicense those rights to downstream services….Defendant DeMeo, has represented that he has the licenses, but has declined to provide me and my counsel with a declaration or with a physical copy of the licenses.

(Compl. ¶ 30 (emphasis added) (quotation omitted).)

Paragraph 31 further implicitly refers to the Hovast distribution agreement:

> DeMeo reportedly answered that Omniverse had "acquired rights to some of these channels including the ability to stream outside by a contract that is only one of three such contracts in the United States." DeMeo refused to "give too many details" because "it could help others figure out how to track down the last two contracts like the one they use."

(Compl. ¶ 31 (citation omitted).) As such, Plaintiffs themselves have put the question of the Hovsat-DirecTV agreement at the center of the case.

Omniverse did not raise the Hovsat-DirecTV agreement "to derail this litigation with factual assertions contrary to the complaint and unsupported by evidence" as Plaintiffs argue in the Opposition. (Opp. at p. 5.) As the Complaint itself implicitly raises the Hovsat-DirecTV agreement within its own four corners, it is disingenuous for Plaintiffs to argue that the Court should ignore it and not take judicial notice of it.

The Complaint also refers to Omniverse's operations under the Hovsat-DirecTV agreement. Specifically, the Complaint refers to Omniverse's representations regarding its operation under the Hovsat-DirecTV agreement. In Paragraph 3, the Complaint refers to Omniverse and its distribution:

-3-

> Defendants apparently misrepresent to these downstream services that Omniverse has authority to "license" copyrighted motion picture and television programming content, including Plaintiffs' Copyrighted Works. Omniverse has no such sub-licensing rights, and thus cannot authorize the downstream series to publicly perform Plaintiffs' Copyrighted Works to their retail customers.

(Compl. ¶ 3.)

Paragraph 32 of the Complaint further states:

> Plaintiffs have not granted license that permit Defendant DeMeo or Omniverse to stream the Copyrighted Works or sublicense streams to whatever counterparty they wish.

(Compl. ¶ 3 (emphasis omitted).) The repeated references to licenses within the four corner of the Complaint make it impossible to ignore the allegations that appear to make license an issue in the case.

## 2. The Complaint Is Unintelligible Because It Makes Ambiguous Contract Allegations

Although Plaintiffs do not directly name the Hovsat-DirecTV Agreement, Paragraphs 3 and 32 of the complaint apparently contest the scope of the Hovsat-DirecTV agreement. Specifically, Plaintiffs apparently allege that Omniverse has "no sub-licensing rights" (Compl. ¶ 3) and that Omniverse cannot "sublicense streams to whatever counterparty they wish." (Compl. ¶ 32.) Because these repeated references are to an agreement that Plaintiffs themselves are asking the Court to ignore, Plaintiffs must make clear whether the Hovsat-DirecTV agreement is at issue. Plaintiffs must make it clear whether they are alleging that Omniverse alleged conduct is a breach of the Hovsat-DirecTV agreement. And more specifically, Plaintiffs must make it clear whether the areas of the Hovsat-DirecTV agreement that are at issue include sub-licensing rights and service limitations. Omniverse cannot formulate a proper response to Plaintiffs' allegations because the Complaint contains allegations that are open to wildly different interpretations.

The Opposition argues that the contract and licensing issues raised by the Hovsat-DirecTV agreement "relate solely to affirmative defenses." (Opp. at p. 6 (citation omitted).) Omniverse is requesting Plaintiffs make their Complaint more definite because this issue is raised *within* the Complaint itself. The fact that licensing is an affirmative defense does not change the issues raised within the Complaint. Plaintiffs miscite *WB Music Corp. v. Futuretoday, Inc.*, No. 218CV01238CASFFMX, 2018 WL 4156589 (C.D. Cal. Aug. 28, 2018), because *WB Music* referred to "*potential* affirmative defenses." *Id.* at *2 (emphasis added). Here, Plaintiffs have *raised* the scope of the Hovsat-DirecTV agreement within their own Complaint. Additionally, Plaintiffs' citation of *WB Music* is weak because it is an unpublished Westlaw citation.

Given the fundamental ambiguity in the Complaint, the Complaint is unintelligibe because the allegations potentially read on both copyright infringement and contract interpretation. Therefore, Plaintiffs should be ordered to amend their Complaint to provide a more definite statement.

**B.     Plaintiffs Should Be Severed**

Plaintiffs have not made sufficient allegations in the Complaint to support joinder under *any* theory of copyright liability. Plaintiffs have not established how the claims "arise out of a systematic pattern of events and, therefore, arise from the same transaction or occurrence" or how each of Plaintiffs' claims involve the same "legal issues, standards, and procedures" that require "personalized attention." *Coughlin v. Rogers,* 130 F.3d 1348, 1350-51 (9th Cir. 1997).

**1.     Plaintiffs Have Not Alleged How Copyright Infringement Arises Out of the Same Transaction, Occurrence, or Series of Transactions or Occurrences**

Plaintiffs contend that joinder is proper because they have alleged "public performances of their copyrighted content to the public without authorization by streaming live television content over the internet to consumers through downstream

services." (Opp. at p. 15.) However, Plaintiffs fail to raise any factual allegations specific to public performance, such as the channels of the performance, where the performance went, or how the performance occurred. Moreover, Plaintiffs assume a systematic pattern of infringement as to all Plaintiffs without stating which properties were affected in what ways. The legal issues in the case at hand are not established, and may change if the case were to progress, because Plaintiffs have not alleged common facts to support their copyright liability theory. This would lead to a large eight plaintiff case with "personalized attention" required for each plaintiff.

Plaintiffs' Opposition demonstrates how the Complaint does not arise out of the same transactions, asking "where Omniverse obtains its live television streaming, how Omniverse's streaming operation works, and to whom Omniverse streams." (Opp. at p. 15.) Plaintiffs have merely demonstrated that they have similar questions, but Plaintiffs still fail to demonstrate that they share similar facts. The only common fact Plaintiffs have alleged is Omniverse is involved.

Plaintiffs further contend that the case law case law of *On the Cheap LLC v. Does 1-5011*, 280 F.R.D. 500 (N.D. Cal. 2011), and *Papagiannis v. Pontikis*, 108 F.R.D. 177 (N.D. Ill. 1985), does not apply. In *On the Cheap*, defendants who all downloaded the film "Danielle Stab Raw" using the BitTorrent software were severed. In the Opposition, Plaintiffs claim that *On the Cheap* does not apply because Omniverse is "streaming their copyrighted works not downloading different copyrighted films and television shows." (Opp. at p. 16 (emphasis removed) (quotation omitted).) Plaintiffs logic fails because the direction of the downloading does not change the circumstances. All of the *On the Cheap* defendants were using the *exact same software platform* for the *exact same file* and the defendants were still severed. And unlike the defendants Plaintiffs cite from *Grokster, Aereo, Napster, and FilmOn*, Omniverse is not redistributing captured television signals over the internet

and is not a peer-to-peer file sharing network.[1] Moreover, Plaintiffs do not even state *how* Omniverse is operating beyond stating that the operation is infringing.

Furthermore, the plaintiffs in *Papagiannis* were severed despite all the plaintiffs being defrauded by the same individual. The Opposition states that *Papagiannis* does not apply because each individual fraud claim required "individualized proof." *Papagiannis*, 108 F.R.D. at 179. Here, Plaintiffs have demonstrated that each case will require individualized proof because Plaintffs do not know "where Omniverse obtains its live television streaming, how Omniverse's streaming operation works, and to whom Omniverse streams." (Opp. at p. 15.) Each alleged broadcast may have individualized facts specific to that work. Plaintiffs *hope* that all of their claims against Omniverse will arise out of the same transaction, occurrence, or series of transactions or occurrences without stating how.

Thus, the Complaint does not allege a copyright claim that arises out of the same transaction, occurrence, or series of transactions or occurrences. For these reasons, the Court should grant the motion to sever Plaintiffs.

### C. The Complainant's References to Dragon Box Should be Stricken

Plaintiffs fail to explain in their Opposition what is their purpose in mentioning Dragon Box when it is not even a defendant. The only apparent purpose for Plaintiffs to mention Dragon Box is that Dragon Box is a well-known pirate that submitted to a settlement of $14.5 billon before this Court. *See Netflix Studios, LLC v. Dragon Media Inc.*, 2:18-cv-00230-MWF-AS.[2] Dragon Box is not, as Plaintiffs contend, an appropriate analogy because of a "business relationship" (Opp. at p. 11) nor is

---

[1] *Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431 (2014); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005); *Fox Televisions Stations, Inc. v. Aereokiller, LLC (FilmOn)*, 851 F.3d 1002 (9th Cir. 2017); *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004 (9th Cir. 2001).

[2] *See Netflix, Amazon, & Hollywood Settle Their Lawsuit With The "Kodi Box" Maker Dragon Box* (May 8, 2018), available at https://www.cordcuttersnews.com/netflix-amazon-hollywood-settle-their-lawsuit-with-the-kodi-box-maker-dragon-box; *Netflix, Amazon, and Hollywood studios shut down maker of "free TV" box* (May 8, 2018), available at https://arstechnica.com/tech-policy/2019/01/free-tv-box-maker-agrees-to-shut-down-and-pay-14-5m-to-copyright-holders/; *et al.*

Dragon Box a relevant to the claims as Plaintiffs suggest because Dragon Box is not involved nor similar to Omniverse's operations.

### 1. Plaintiffs Have No Adequate Justification for Comparing Omniverse to Dragon Box

Plaintiffs claim in their Opposition that the comparisons between Dragon Box and Omniverse are not cruelly derogatory because of a "business relationship" that once existed (but no longer) between Omniverse and Dragon Box. (Opp. at p. 11.) However, this statement ignores the fact that Dragon Box was pirating using Kodi "illicit addons such as Covenant" not affiliated nor connected to Omniverse. *Netflix Studios, LLC v. Dragon Media Inc.,* No. CV 18-230-MWF (ASX), 2018 WL 7891027, at *1 (C.D. Cal. Dec. 21, 2018). Plaintiffs' "business relationship" justification assumes that Omniverse operates in the same way as every entity with which it has ever done business. According to Plaintiffs' logic, a vendor that sells a widget to a criminal is thus a criminal by association.

Plaintiffs' "business relationship" justification hides the real reason why Dragon Box is referred to multiple times in the Complaint even though Dragon Box was effectively shut down before the Complaint was even filed: Dragon Box is a well-known pirate and Plaintiffs want to associate Omniverse with piracy. Omniverse cannot avoid prejudice from Plaintiffs' associating Omniverse with Dragon Box because this association assigns guilt.

### 2. Dragon Box is Not Relevant to Omniverse's Liability

In the Opposition, Plaintiffs state that Dragon Box "is relevant to Omniverse's liability, and state of mind for damages." (Opp. at p. 12.) However, this has no possible bearing on the subject matter because Omniverse and Dragon Box are distinct entities with different modes of operation. Plaintiffs are alleging complaints against *Omniverse*, not Dragon Box. Moreover, Dragon Box committing copyright infringement in the past on its own does not mean that Omniverse committed copyright infringement while having a "business relationship" with Dragon Box.

This is purely guilt by association. According to Plaintiffs, Omniverse's scienter is established by those Omniverse did business with *independent* of the factual transactions. However, plaintiffs allege no factual connection between Dragon Box and the *other* entities Omniverse does business with.

Thus, the Complaint's comparisons of Dragon Box to Omniverse are scandalous because they cast Omniverse in a cruelly derogatory light and immaterial because they have no possible bearing on the subject matter. For these reasons, the Court should grant the motion to sever Plaintiffs.

### III. CONCLUSION

For the foregoing reasons, the Court must grant Omniverse's motion (1) to sever Plaintiffs, (2) for a more definite statement, and (3) to strike scandalous and immaterial material from the Complaint.

Respectfully submitted,

TROJAN LAW OFFICES
By

May 10, 2019

/s/ R. Joseph Trojan
R. Joseph Trojan
Attorney for Omniverse One World
Television, Inc. and Jason M. Demeo