GLENN D. POMERANTZ (SBN 112503)
Glenn.Pomerantz@mto.com
MELINDA E. LEMOINE (SBN 235670)
Melinda.LeMoine@mto.com
MARK R. YOHALEM (SBN 243596)
Mark.Yohalem@mto.com
ROSE LEDA EHLER (SBN 296523)
Rose.Ehler@mto.com
USHA C. VANCE (SBN 309353)
Usha.Vance@mto.com
ANNE K. CONLEY (SBN 307952)
Anne.Conley@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION; COLUMBIA PICTURES INDUSTRIES, INC.; DISNEY ENTERPRISES, INC.; TWENTIETH CENTURY FOX FILM CORPORATION; WARNER BROS. ENTERTAINMENT INC.; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL TELEVISION LLC; and UNIVERSAL CONTENT PRODUCTIONS LLC, | Case No. 2:19-cv-01156-DMG-PJWx **JOINT RULE 26(f) REPORT** Judge: Hon. Dolly M. Gee Magistrate Judge: Hon. Patrick J. Walsh |
| Plaintiffs, | |
| vs. | |
| OMNIVERSE ONE WORLD TELEVISION, INC.; JASON M. DEMEO, | |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 26 and Central District of California Local Rule 26-1, Plaintiffs Paramount Pictures Corporation, Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Twentieth Century Fox Film Corp., Warner Bros. Entertainment, Inc., Universal City Studios Productions LLLP, Universal Television LLC, and Universal Content Productions LLC (collectively, "Plaintiffs") and Defendants Omniverse One World Television, Inc. and Jason M. DeMeo (collectively, "Omniverse"), by and through their respective counsel of record, hereby submit the following Joint Report.  Counsel for Plaintiffs and Omniverse met and conferred on these issues on June 3, 2019.

## I.    Statement of the Case

### A.    Plaintiffs' Position

Omniverse has served a central role in the supply chain for unauthorized content delivery, feeding unauthorized streams of Plaintiffs' copyrighted movies and television shows ("Copyrighted Works") to numerous customer-facing partners who have advertised their services as "Powered by Omniverse."

Omniverse's unauthorized delivery of live television content over the Internet directly violates Plaintiffs' exclusive public performance right under settled United States Supreme Court law.  *See Am. Broadcasting Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 436 (2014).  Further, Omniverse's business of delivering content through downstream services and other resellers has induced and materially contributed to the direct infringement of Plaintiffs' reproduction and public performance rights by those downstream services, resellers, and their customers.  Plaintiffs' Complaint lays out each of these claims, and it appears there is no genuine dispute on the current record as to whether Omniverse can demonstrate a purported license to support its defense.

1   In response to this lawsuit, Omniverse initially claimed that its conduct was

2   authorized by a purported one-hundred-year agreement negotiated in the 1990s.[1]

3   But more recently, Omniverse issued a press release stating that it has ceased

4   delivering content, including Plaintiffs' Copyrighted Works, to "single dwelling

5   residential customers" as of May 31, 2019.[2]  Through this press release, Omniverse

6   now appears to acknowledge that no agreement, including any agreement in its

7   possession or the agreement recently produced by DirecTV, provides Omniverse

8   with the necessary authority to perform, reproduce, or do anything at all with

9   Plaintiffs' Copyrighted Works.  As part of this recent press effort, Omniverse also

10  announced that it intends to continue to deliver live television programming to

11  "multi dwelling unit operators."  But nothing supports any supposed right to deliver

12  Plaintiffs' Copyrighted Works in this manner.

13  Plaintiffs will present these issues to the Court for resolution as expeditiously

14  as possible to ensure that Omniverse does not continue its unauthorized delivery of

15  Plaintiffs' Copyrighted Works and is held accountable for its wrongdoing.

16  **B.   Omniverse's Position**

17  Defendants object to the notion of using press releases to frame the issues of

18  fact and law in this case. Omniverse and its CEO, Mr. Demeo, negotiated an

19  agreement with a noted inventor, cable entrepreneur, and developer, Shant

20  Hovnanian, whereby Omniverse would act as a marketing agent for the delivery of

21  cable content for Mr. Hovnanian's cable operator company or companies. Mr.

22  Hovnanian had a complex network of companies and entities including Speedus,

23  Grand View Cable, and HovSat. But it is clear that he had a cable operation

24  company and that he delivered cable service to multi-dwelling units and used a

---

[1]  https://www.lightreading.com/video/video-services/omniverse-ceo-im-doing-everything-literally-by-the-book-/d/d-id/749924?_mc=RSS_LR_EDT

[2]  https://www.prweb.com/releases/omniverse_tv_announces_changes_to_its_live_television_services_offering/prweb16348740.htm

headend in New Jersey. Ultimately a joint venture agreement was agreed to and negotiated with HovSat. The Joint Venture Agreement, dated Nov. 1, 2017 provided that HovSat, Inc., a New Jersey company, and Omniverse, and their appropriate "affiliates" would distribute television programming received under agreements that HovSat or its affiliates had with cable signal providers such as DirecTV using a proprietary "over the top" or OTT media streaming platform, infrastructure and distribution relationships. Omniverse (called OmniSat in the agreement) was to launch an innovative new television streaming service for distributing television programming currently received under contract by HovSat, a multi-channel programming provider. HovSat undertook to and did provide a co-location agreement for access to the content and technology, and provided equipment and infrastructure at a data center facility in New Jersey. The venture undertook to serve underserved and low-income residential and multi-dwelling residential subscribers. It later expanded its base to non-local residential subscribers who were customers of various companies that had affiliate relationships with it.

For a brief time Omniverse also has a set top box which allowed for the delivery of live TV and video on demand. This product was offered for sale from 2014 to 2017 was supported by Omniverse through January 2018. At its peak, the Omnibox userbase was less than 200 users. In substance the Omnibox was sold hard-coded to open the Omnibox application allowing the owner to pay for and receive live TV services and video on demand. The box did not provide any Kodi or Kodi-like applications, add-ons or other software or applications that might allow owners to access and stream or copy pirated content available online. Any VOD services provided included licensed content from Flimon, MediaFly and Playon, and possible others.

Omniverse streaming was accomplished with various streaming partners such as SotalCloud, TikiLIVE and Vista TV. The conditional access technology ensured that streamed content was viewable by paying subscribers (namely subscribers of

companies like TikiLIVE) and was considered to be highly robust with respect to preventing third-party misappropriation of streams for unlicensed re-transmission.

During its period of streaming, Omniverse had contracts with "partners' with HTTP Headers and login credentials that enabled them to pull Omniverse streams (which it obtained from what it thought were licensed sources like HovSat) from Omniverse controlled domain names.

Omniverse did not subscribe to Amazon Web Services and Google Cloud Platform [Omniverse did subscribe to Amazon Cloud Front, a content delivery service, however this is not the same as storing movies for replaying or VOD], did not store large amounts of data or media, and never used such services to store media or any sort. When Omniverse provided VOD services, the media was delivered to subscribers separate from the Hovsat service and such content was managed, served and charged for by unrelated third parties.  Where in the past Omniverse through OmniBox, delivered VOD that content was licensed from and was stored on the servers of the rights owners, such as Filmon, Mediafly, and Playon.

Omniverse accordingly disagrees with the claim that it copied or stored or caused to be copied or stored copyrighted content of Plaintiffs. It did not copy copyrighted works. It did stream what it believed to be (and which still may be) licensed content and it paid for that content by, for example, paying significant fees to HovSat, which was supposed to be accounting appropriately to DirecTV.

Omniverse was not itself a licensed broadcaster or re-broadcaster of media content but understood that it was marketing technology and other media delivery services through its joint venture partner, HovSat. It also understood that HovSat was licensed to distribute live TV under a distribution agreement or series of agreements between HovSat (or Hovnanian affiliates) and DirecTV. As Omniverse understood it, DirecTV held the right to distribute and sub-distribute content, including copyrighted content of rights holders, by way of their distribution

agreements with television networks and movie studios. In fact, it paid substantial sums for what was always a small company to HovSat with the understanding that DirecTV in turn was receiving appropriate fees from HovSat, with whom there was a direct contract relationship of a confidential nature. Investors in Omniverse advanced millions of dollars to Omniverse to buy the equipment and infrastructure and to finance the growth of the company believing that the DirecTV and HovSat relationship was as related above and was in full compliance with the law.

After this litigation commenced, Omniverse made many demands on HovSat for proof to corroborate its license relationships and for material assistance in defending the claims in suit. Omniverse also agreed to a subpoena to DirecTV to obtain what it expected to be archived records dating back to the 1990s and early 2000s between Hovananian entities (of which there were many) and DirecTV or its predecessor companies. Thus far the subpoenas have not located historical records of significance earlier than 2003. It is not known if such records will be found in discovery or not. Mr. Hovnanian is apparently in Armenia and his attorneys have not come forward to support the legal position of HovSat. What is more, the DirecTV production did not reflect the receipt of large license fees from HovSat even though large payments were made to HovSat by Omniverse. This was of substantial concern to Omniverse and its investors because they were aware of the accounting records showing the payments to HovSat and fully expected the DirecTV records to reflect the receipt of appropriate license fees from HovSat to DirecTV. After further efforts to learn what happened to the money and to master distribution or other contracts with DirectTV or its predecessors that antedated 2003, Omniverse management directed the cessation of all streaming services to residential subscribers, effective May 31, 2019, and determined that the company will be wound-up and go out of business under the provisions of Delaware law. This will result in a very considerable loss of investor funds in the business.

1  Omniverse accounting records and tax returns will not show that it made a

2  profit during its operations. On the contrary, it is believed to have lost substantial

3  sums.

4  While the company did announce by press release that it intended to continue

5  to deliver MDU-related services, it has elected to discontinue its business

6  relationship with HovSat and will not be pursuing any MDU opportunities with

7  third-parties as a company. Instead, the company will be unwinding its business

8  operations and will make commercially reasonable dispositions of its equipment and

9  assets in accordance with Delaware law.

10  There are currently funds due to HovSat for alleged license rights. Given the

11  circumstances related above, however, Omniverse has suspended these payments.

12  Omniverse expects to investigate in discovery in this case its rights to

13  indemnification from HovSat and related entities and may sue HovSat and various

14  third parties as a result.

15  Omniverse reiterates the position it has taken in its pending and unresolved

16  motion for more definite statement. It disputes the claims of copyright infringement,

17  including claims under 17 U.S.C. §106 (4). *See generally Fox Broadcasting Co v.*

18  *Dish Network LLC.,* 160 F. Supp. 3d 1139 (C.D. Cal. 2015). It likewise disputes any

19  contributory or vicarious infringement alluded to by plaintiffs in their complaint. To

20  the extent there was any infringement, such infringement was, on information and

21  belief, without malice or bad intent by Omniverse or its management and was

22  caused or contributed to by third-parties such as HovSat.

23  **II.    Changes to Timing, Form, or Requirements for Initial Disclosures under**
       **Rule 26(a) [Fed. R. Civ. P. 26(f)(3)(A)]**

24  The Parties have agreed to exchange initial disclosures on June 24, 2019.

25

26

27

28

## III. Subjects, Timing, and Phasing of Discovery [Fed. R. Civ. P. 26(f)(3)(B)][3]

### A. Plaintiffs' Position

#### 1. Subjects of Discovery

Plaintiffs intend to seek discovery from both Defendants:

- Omniverse's operations and streaming activities;
- Omniverse's sources of content;
- Omniverse's relationships with downstream services, including communications with such services, fee structure, advertising and marketing materials, any support offered, etc.;
- Omniverse's claim that it operates under a valid license;
- Omniverse and/or Jason M. DeMeo's financial records showing revenues and ability to satisfy a judgment.

Plaintiffs will obtain such discovery through requests for production, interrogatories, requests for admission, at least one 30(b)(6) deposition from Omniverse, and a deposition of Jason M. DeMeo personally. Plaintiffs also anticipate some additional third-party discovery, to the extent necessary.

The Court previously authorized the Parties to seek expedited third-party discovery of Hovsat Cable, Inc. ("Hovsat"). (ECF No. 33.) However, Hovsat's business registration in New Jersey was revoked in 2012, and its principal, Shant Hovnanian, has apparently left the country, making service difficult. To date, Plaintiffs have been unable even to identify counsel for Hovsat. Omniverse's counsel stated that he has been in contact with Hovsat's counsel on two occasions, but continues to decline to provide Plaintiffs with contact information for Hovsat's counsel despite repeated requests from Plaintiffs' counsel.

---

[3] For the Court's convenience, the Parties' respective proposed deadlines are set forth in table form in Appendix A.

2.      Timing of Discovery

During the Parties' conference, Plaintiffs suggested that the period of fact discovery need not be prolonged because the issues to be resolved are narrow and focused.  Omniverse stated that it did not believe discovery should be expedited, because it intended to seek deposition testimony from Mr. Hovnanian, who, as noted above, is out of the country.  To accommodate Omniverse's position, Plaintiffs therefore request that the Court set September 20, 2019 as the close of fact discovery, which will provide the parties with 9 months from filing of Plaintiffs' Complaint to conduct fact discovery or the investigation Omniverse states that it requires.  Plaintiffs then request that the Court set the following deadlines for expert discovery:

- Deadline for affirmative expert reports: November 20, 2019;
- Deadline for rebuttal expert reports: January 6, 2020; and
- Close of expert discovery: January 31, 2020.

Plaintiffs further request that the Court set a deadline for dispositive motions of February 28, 2020 and set the case for trial 60 days after the hearing on any dispositive motions filed by the Parties.

**B.     Omniverse's Position**

Defendants will conduct all necessary discovery into the DirecTV and Hovnanian license and contract relationships, including such discovery as may be available from predecessors in interest to DirecTV. It expects to depose Hovnanian affiliates and persons with knowledge of HovSat, Inc, HovSat, LLC and all affiliated companies concerning the license claims by Shant Hovnanian and HovSat. It will also engage in third-party subpoenas and discovery necessary to "follow the money" paid to HovSat for what it believed to be license rights.

Defendants expect to depose Plaintiffs and their corporate representatives for details as to each alleged act of infringement attributed to Omniverse and Demeo.

1  It is likely that Omniverse will pursue third-party claims in this case and will

2  need appropriate time to engage those parties for information and to develop claims

3  against them. It therefore regards the discovery schedule suggested by Plaintiffs as

4  too short and proposes the following deadlines:

5  - Fact discovery cut-off and Fact discover motion cut-off:  January 24,

6    2020.

7  It should be added that Omniverse believes that some of the claims asserted

8  by the Plaintiffs are likely to be subject to insurance coverage and that Omniverse is

9  possibly entitled to a defense on such claims. The speedy discovery schedule

10  suggested by counsel for Plaintiffs would only hinder the transition to new counsel

11  that appears likely to occur in order to permit the defense of the case by an insurance

12  carrier.

13  **IV.    Electronically Stored Information [Fed. R. Civ. P. 26(f)(3)(C)]**

14  In accordance with Federal Rule of Civil Procedure 34(b)(2)(E)(ii), the

15  Parties will produce electronically stored information in the manner it is kept in the

16  usual course of business and in a reasonably usable form.  The Parties intend to meet

17  and confer further on a stipulation regarding the appropriate format and

18  specifications for the exchange of electronically stored information.

19  **V.    Claims of Privilege; Protective Order [Fed. R. Civ. P. 26(f)(3)(D)]**

20  The Parties discussed and neither side anticipates any unusual or significant

21  issues relating to privilege.  The Parties have stipulated to a protective order, which

22  the Court entered on March 25, 2019.  (ECF No. 24.)  The Parties intend to meet

23  and confer further on a stipulation regarding the appropriate format and

24  specifications for privilege logs to ensure that the obligation to identify what

25  documents are being withheld for privilege is not unduly burdensome on either side.

26  Pursuant to Federal Rule of Evidence 502(b), the Parties agree that if any

27  documents subject to a claim of privilege or protection are inadvertently produced,

28  such an inadvertent disclosure shall not operate as a waiver of privilege.

## VI. Limitations on Discovery [Fed. R. Civ. P. 26(f)(3)(E)]

The Parties agreed that the Federal Rules of Civil Procedure and Local Rules governing discovery shall not be modified with one exception.  Omniverse believes it requires 15 depositions as opposed to the 10 provided under the Federal Rules.  In particular, Omniverse seeks a 30(b)(6) deposition from each Plaintiff, as well as certain third-party depositions and perhaps other depositions of individuals affiliated with Plaintiffs.  Plaintiffs propose that the Parties continue to meet and confer on whether it is necessary to expand the number of depositions beyond 10 per side, since the Parties likely will seek third-party depositions from the same people or entities.  In the event the Parties have a dispute as to whether more than 10 depositions per side are required, the Parties can present that to the Magistrate Judge on a more complete record.

## VII. Other Orders [Fed. R. Civ. P. 26(f)(3)(F)]

The Parties are unaware of any other orders that the Court should issue under Rule 26(c) or Rules 16(b) or (c).

## VIII. Complexity of the Case [L.R. 26-1(a)]

The Parties do not believe that this case is complex or that it requires reference to the procedures set forth in the Manual for Complex Litigation.

## IX. Motion Schedule [L.R. 26-1(b)]

### A. Plaintiffs' Position

Plaintiffs intend to file a motion for summary judgment on liability as soon as is practicable.  Plaintiffs propose a dispositive motion filing cut-off of February 28, 2020, one month after the close of expert discovery.

### B. Omniverse's Position

Omniverse requests that the Court set a deadline for filing of dispositive motions of April 17, 2020; a deadline for opposition briefs to dispositive motions of May 15, 2020; a deadline for reply to dispositive motions of May 29, 2020; a deadline for hearing on dispositive motions of June 26, 2020, a Pretrial Conference

1  deadline of July 20, 2020, and set the case for jury trial no earlier than August 3,
2  2020.

## X.   Alternative Dispute Resolution [L.R. 26-1(c)]

The Parties agree that formal settlement discussions are unlikely to be productive until the Court adjudicates the Parties' summary judgment motions.  If such motions do not resolve the case, Plaintiffs elect to proceed in mediation before a private mediator under ADR Procedure No. 3, while Omniverse prefers to ask the Magistrate Judge assigned to the case to mediate pursuant to ADR Procedure No. 1. *See* L.R. 16-15.4.  Plaintiffs are willing to proceed in front of the Magistrate Judge if Omniverse will not consider a private mediator.

Defendants propose a deadline for court-ordered mediation of January 31, 2020.

## XI.   Trial Estimate [L.R. 26-1(d)]

Plaintiffs have demanded a jury trial.  The Parties anticipate a trial time of 5 to 10 court days, depending on the number of issues that may be resolved on summary judgment.

## XII.   Additional Parties [L.R. 26-1(e)]

### A.   Plaintiffs' Position

Plaintiffs do not intend at this time to join additional parties to this action.

### B.   Omniverse's Position

Omniverse expects that third parties will be added to the case after a short time of discovery into the indemnification issues associated with its relationship with HovSat, Hovnanian and their respective affiliates, and proposes a deadline of July 26, 2019.

## XIII.  Expert Discovery [L.R. 26-1(f)]

The Parties discussed and contemplate a minimum of two experts per side, including a technical expert and a damages expert.

### A.   Plaintiffs' Position

Plaintiffs propose November 20, 2019 as the deadline for the disclosure of affirmative experts and affirmative expert reports, and propose January 6, 2020 as the deadline for the disclosure of rebuttal experts and rebuttal expert reports. Plaintiffs propose a cut-off for expert discovery of January 31, 2020.

### B.   Omniverse's Position

Defendants suggest the following deadlines:

- Deadline for opening expert reports (on issues for which the party bears the burden of proof): February 28, 2020;
- Deadline for rebuttal expert reports: March 27, 2020; and
- Close of expert discovery: April 28, 2020.

DATED:  June 18, 2019                MUNGER, TOLLES & OLSON LLP

By:  */s/ Melinda E. LeMoine*
       MELINDA E. LEMOINE
Attorneys for Plaintiffs

DATED:  June 18, 2019                BYRD CAMPBELL, P.A.

By:  */s/ Stephen D. Milbrath*
       STEPHEN D. MILBRATH
Attorneys for Defendants

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>FILER'S ATTESTATION</u>**

I, Melinda E. LeMoine, am the ECF user whose identification and password are being used to file this Joint Rule 26(f) Report.  Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I hereby attest that the above-named signatories concur in and authorize this filing.

DATED:  June 18, 2019

By:  */s/ Melinda E. LeMoine*
　　　MELINDA E. LEMOINE

**APPENDIX A**

| Event | Plaintiffs' Proposed Deadline | Omniverse's Proposed Deadline |
|---|---|---|
| Initial disclosures | June 24, 2019 | June 24, 2019 |
| Deadline to join additional parties | | July 26, 2019 |
| Close of fact discovery | September 20, 2019 | January 24, 2020 |
| Affirmative expert reports | November 20, 2019 | February 28, 2020 |
| Rebuttal expert reports | January 6, 2020 | March 27, 2020 |
| Close of expert discovery | January 31, 2020 | April 28, 2020 |
| Dispositive motions deadline | February 28, 2020 | April 17, 2020 |
| Opposition briefs deadline | To be negotiated or set by Local Rules | May 15, 2020 |
| Reply briefs deadline | To be negotiated or set by Local Rules | May 29, 2020 |
| Hearing on dispositive motions | To be negotiated or set by Local Rules | June 26, 2020 |
| Court-ordered mediation | After adjudication of dispositive motions | January 31, 2020 |
| Pretrial conference | To be negotiated or set by Local Rules | July 20, 2020 |
| Trial | 60 days after hearing on dispositive motions | August 3, 2020 |