GLENN D. POMERANTZ (SBN 112503)
Glenn.Pomerantz@mto.com
ROSE LEDA EHLER (SBN 296523)
Rose.Ehler@mto.com
ANNE K. CONLEY (SBN 307952)
Anne.Conley@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION; COLUMBIA PICTURES INDUSTRIES, INC.; DISNEY ENTERPRISES, INC.; TWENTIETH CENTURY FOX FILM CORPORATION; WARNER BROS. ENTERTAINMENT INC.; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL TELEVISION LLC; and UNIVERSAL CONTENT PRODUCTIONS LLC, | Case No. 2:19-cv-01156-DMG-PJWx |
| | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO REQUEST THAT THE COURT COMPEL MEDIATION** |
| Plaintiffs, | Judge: Hon. Dolly M. Gee Courtroom: 8C |
| vs. | Magistrate Judge Hon. Patrick J. Walsh |
| OMNIVERSE ONE WORLD TELEVISION, INC.; JASON M. DEMEO, | Filed concurrently: Declaration of Rose Leda Ehler and Exhibits Thereto |
| Defendants. | |

**INTRODUCTION**

Defendants' *ex parte* application is styled as a request to "compel mediation," but their true goal—revealed only in the concluding sentence to their application—is a stay of discovery.  Neither form of relief is warranted here.  Defendants have not so much as cited, much less attempted to satisfy, the heightened requirements for seeking *ex parte* relief.  *See Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995); *see also* Initial Standing Order at 10, ECF No. 17 ("Ex parte applications are solely for extraordinary relief and should be used with discretion.").  For that reason alone, the Court should deny the application.

Defendants' request for a mediation (and a stay of discovery) is also premature.  Consistent with the Federal Rules of Civil Procedure, Plaintiffs are entitled to discover the extent and willfulness of Defendants' copyright infringement.  Plaintiffs' goal is genuine:  they seek to conclusively resolve Defendants' infringing conduct (and stop it from happening again) and obtain damages for past infringement as expeditiously and economically as possible. Plaintiffs are not opposed to a mediation when one would be productive, *after* Defendants respond to the outstanding discovery they seek to avoid, so that the information central to this action's claims and defense is known to both parties.  The Court should deny Defendants' *ex parte* application.

**BACKGROUND**

Plaintiffs are copyright owners of numerous popular and acclaimed films and television shows that appear on live television every day.  Defendants Jason M. DeMeo and the company that he founded, Defendant Omniverse One World Television, Inc., illegally obtained transmissions of live television programming— including Plaintiffs' works—and then further streamed them over the internet to end users without authorization, infringing Plaintiffs' exclusive public performance and reproduction rights under 17 U.S.C. § 106.  (*See* Complaint at ECF No. 1.)

OPPOSITION TO EX PARTE APPLICATION TO COMPEL MEDIATION

Since Plaintiffs filed this action, they have been seeking targeted discovery, which Plaintiffs believe would establish liability and Defendants' willful infringement. (*See* Decl. of Glenn D. Pomerantz in Supp. of Pls. Opp'n to Defs. Mot. ¶¶ 2-4, ECF No. 34-1.) Instead of complying, Defendants obstructed these efforts. After this Court granted stipulated early subpoenas to Hovsat and DirecTV (the entities that Defendants claim authorized their infringing conduct), Defendants refused to provide Plaintiffs with the contact information they had for Hovsat's attorney so that Plaintiffs could discuss Hovsat's response to the subpoena.[1] (*Id.* ¶ 4.) Not surprising to Plaintiffs, and as Defendants have subsequently admitted, there is no evidence to support Defendants' claim of authorization from DirecTV. (*See id.* ¶ 3; Joint Rule 26(f) Report at 6, ECF No. 39.)

Consistent with both Federal Rule of Civil Procedure 26(f)(1) and the directions in the Court's Initial Standing Order that "it is advisable for counsel to begin to conduct discovery actively before the Scheduling Conference," the parties moved forward with their Rule 26(f) Conference and filed a Joint Report on June 18, 2019. (Initial Standing Order at 3, ECF No. 17; Joint Rule 26(f) Report, ECF No. 39.) Plaintiffs served targeted discovery requests on June 21, 2019. Defendants responded with boilerplate objections. (*See* Ehler Decl. Ex. A.) They now pray for an order compelling mediation and staying discovery in the meantime.

Again, it appears that Defendants want to hide the true facts. While Defendants represented to the Court that they have "ceased operations," (*Ex Parte* Appl. at 3), it appears that Defendant DeMeo is merely shifting from one infringing

---

[1] Hovsat's owner, Shant Hovnanian, is apparently in Armenia, avoiding a default judgment for over $16 million in civil tax penalties. (Declaration of Rose Leda Ehler in Support of Pls. Opp'n ("Ehler Decl.") ¶ 2, filed concurrently herewith.)

1  operation (Omniverse) to another (OSTV Now), advertised as a new "One-Stop For

2  TV Entertainment" to launch on September 1[2]:





17  Whatever the branding, Defendants appear to be continuing their infringing

18  practices.  These and other important facts are exactly why discovery needs to move

19  forward.

## ARGUMENT

21     The standard for *ex parte* relief is that the moving party "will be irreparably

22  prejudiced if the underlying motion is heard according to regular[ly] noticed motion

23  procedures" and the moving party "is without fault in creating the crisis that requires

24  ex parte relief, or that the crisis occurred as a result of excusable neglect."  *Mission*

25  *Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

27  [2] *See* Ehler Decl. Exs. B, C, D; *see also* https://www.lightreading.com/video/video-
services/ostv-now-omniverse-exec-offers-one-stop-shop-for-tv/a/d-id/753420;
28  https://www.ostvnow.com/; https://www.jasondemeo.com/.

1   Consistent with this crisis-requiring standard, this Court's standing orders provide

2   that *ex parte* applications "are solely for extraordinary relief and should be used

3   with discretion."  (Initial Standing Order at 10, ECF No. 17.)  There is no crisis.

4   Defendants will suffer no prejudice in complying with the Federal Rules of Civil

5   Procedure and responding to Plaintiffs' discovery requests.  Defendants also are not

6   without fault.  They seek a mediation now, before Plaintiffs learn the extent of

7   Defendants' infringing operations.  But mediation will be productive only if *both*

8   sides know the key facts, not while one side is hiding them.

9   **A.    Defendants' Demand For Mediation To Avoid Discovery**
    **Obligations Is Not A Proper Basis For *Ex Parte* Relief**

10

11        Normal discovery obligations are not grounds for *ex parte* relief and the cost

12   of discovery is not hardship warranting a stay.  *Cf. Lockyer v. Mirant Corp.*, 398

13   F.3d 1098, 1112 (9th Cir. 2005) ("being required to defend a suit, without more,

14   does not constitute a 'clear case of hardship or inequity'" to support a motion to

15   stay); *In re ConAgra Foods, Inc.*, Case No. CV 11-05379-MMM (AGRx), 2014 WL

16   12580052, at *8 (C.D. Cal. Dec. 29, 2014) (holding that being required to defend a

17   suit or comply with discovery obligations does not justify a stay).

18        Defendants claim that discovery is "moot" and "wasteful" because "there is

19   nothing left to litigate."  (*Ex Parte* Appl. at 3, 5.)  They cite no authority for their

20   proposition that a party's mere assertion that it has voluntarily ceased infringing

21   conduct warrants a stay of discovery and compelled mediation.  Black letter law

22   provides that voluntary cessation does not moot a claim.  *See, e.g.*, *City of Mesquite

23   v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("It is well settled that a

24   defendant's voluntary cessation of a challenged practice does not deprive a federal

25   court of its power to determine the legality of the practice."); *Already, LLC v. Nike,

26   Inc.*, 568 U.S. 85, 91–92 (2013) (except in unusual circumstances, general rule is

27   that voluntary conduct cannot moot a claim).  Further, it appears that Defendant

28   DeMeo has not abandoned his infringing ways—he has merely rebranded to "OSTV

Now."  Given this context, discovery of the questions that Defendants continue refusing to answer—*e.g.*, the scope of Defendants' infringing conduct, Defendants' willfulness, and the extent of damages—is even more critical.  In any event, Rule 26 authorizes Plaintiffs to pursue discovery related to their copyright infringement claims and damages so they may prosecute their case.

Plaintiffs' discovery requests are narrowly tailored and clearly relevant to establishing liability and damages on Plaintiffs' claims.  For example:

> Request for Admission No. 7:  Admit that  YOU have ceased STREAMING CONTENT.
>
> Interrogatory No. 15:  IDENTIFY all channels previously and/or currently distributed, streamed, transmitted, or otherwise communicated by YOU and the dates on which YOU made those channels available.

(*See* Ehler Decl. Ex. A.)  Defendants then failed to provide a single substantive response, despite their requesting (and Plaintiffs granting) a two-week extension.  (*See id.*)  Plaintiffs rightfully initiated the meet-and-confer process to pursue a motion to compel under Judge Walsh's procedures.  (*Id.* Ex. E.)  Only then did Defendants start a rolling production of unusable single-page, "tiff"-format "documents."

While Defendants have said they will provide supplemental responses, this *ex parte* application is their effort to avoid those obligations under the guise of seeking mediation.  (See *Ex Parte* Appl. at 5–6.)  That is not a proper use of *ex parte* procedure.  There is no "crisis," much less a showing that Defendants "will be irreparably prejudiced if the underlying motion is heard according to regular[ly] noticed motion procedures."  *Mission Power Eng'g Co.*, 883 F. Supp. at 492; *see also Lockyer*, 398 F.3d at 1112; *In re ConAgra Foods, Inc.*, 2014 WL 12580052, at *8.

**B.      Mediation Can Only Be Productive Once Defendants Respond To Discovery And Confront The Facts In Good Faith**

Defendants contend that "the parties reached an impasse when Plaintiffs demanded that Defendants admit to what amounts to egregious conduct in exchange for settlement" and "Defendants fear Plaintiffs intend to use such a stipulated judgment as part of a criminal investigation against Defendants." (*Ex Parte* Appl. at 3.)  None of this is true.

No "impasse" was reached.  Rather, Defendants simply stopped negotiating in good faith.  (*See* Ehler Decl. Ex. F.)  Plaintiffs obviously could not agree to a settlement agreement littered with multiple pages of unsupported "facts" that Defendants sought to insert, given that there has been no discovery.  After refusing to comply with the discovery necessary to test the "facts" they sought to include in the settlement agreement, Defendants unilaterally announced that mediation was necessary and stated they would seek an *ex parte* order compelling it if Plaintiffs would not voluntarily agree.  (*Id.*)  Again, this fails the *Mission Power* standard.  Much less being "without fault" in creating the situation, it is Defendants' failure to provide substantive discovery and negotiate in good faith that has prevented productive settlement discussions.  *See Mission Power*, 883 F. Supp. at 492.

Defendants also make unsubstantiated accusations and express a "fear" of how a stipulated judgment might be used in a criminal investigation.  Plaintiffs will comply with their legal obligations to cooperate with any criminal investigation.  But they have no control over that proceeding nor are they a party to it.  Plaintiffs' interest is in obtaining *civil* relief in the form of an injunction and damages.

The parties' settlement progress to date makes clear a mediation is premature.  Only when the facts are known to *both* sides (not just Defendants) can the parties meaningfully engage in a mediation.  Defendants' *ex parte* is a transparent attempt to avoid the very discovery that would reveal those facts, seemingly so they can continue infringing in the meantime.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' *ex parte* application.


DATED:  August 20, 2019          MUNGER, TOLLES & OLSON LLP


                                 By:    */s/ Rose Leda Ehler*
                                 _____
                                      ROSE LEDA EHLER
                                 Attorneys for Plaintiffs