R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA  90212
Telephone:   310-777-8399
Facsimile:   310-777-8348

STEPHEN D. MILBRATH (*pro hac vice*)
smilbrath@byrdcampbell.com
BYRD CAMPBELL, P.A.
180 N. Park Avenue, Suite 2A
Winter Park, FL, 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286

Attorneys for Defendants and Third-Party Plaintiff,
OMNIVERSE ONE WORLD TELEVISION, INC. and JASON M. DEMEO

*(vertical text in left margin:)* TROJAN LAW OFFICES  BEVERLY HILLS

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION; COLUMBIA PICTURES INDUSTRIES, INC.; DISNEY ENTERPRISES, INC.; TWENTIETH CENTURY FOX FILM CORPORATION; WARNER BROS ENTERTAINMENT, INC.; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL TELEVISION LLC; and UNIVERSAL CONTENT PRODUCTIONS LLC,<br>　　　　　Plaintiffs,<br>　　v.<br>OMNIVERSE ONE WORLD TELEVISION, INC.; JASON M. DEMEO,<br>　　　　　Defendants. | CASE NO. 2:19-cv-01156-MFW-ASx<br><br>**THIRD-PARTY PLAINTIFF OMNIVERSE ONE WORLD TELEVISION, INC.'S THIRD-PARTY COMPLAINT FOR INDEMNIFICATION, BREACH OF CONTRACT, NEGLIGENT MISREPRESENTATION, FRAUDULENT MISREPRESENTATION, BREACH OF IMPLIED WARRANTY OF TITLE AND AGAINST INFRINGEMENT, AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: Hon. Michael W. Fitzgerald |
| OMNIVERSE ONE WORLD TELEVISION, INC.,<br>　　　Third-Party Plaintiff,<br>　　v.<br>HovSat, Inc.; Shant Hovnanian; and DOES 1-10, inclusive,<br><br>　　Third-Party Defendants. | |

**THIRD-PARTY CLAIMS**

COME NOW Third-Party Plaintiff OMNIVERSE ONE WORLD TELEVISION, INC. ("Third-Party Plaintiff" or "OMNIVERSE"), by and through their counsel of record and pursuant to Federal Rule of Civil Procedure 12, hereby complain and allege as follows:

## I.  THE PARTIES

1.     Third-Party Plaintiff Omniverse One World Television, Inc. is a Delaware corporation, with head office at 1712 Main Street, Suite 100, Kansas City, Missouri 64108-1332.

2.     Upon information and belief, Third-Party Defendant Hovsat, Inc. is a revoked New Jersey corporation, with head office at 2500 Shafto Road, Tinton Falls, New Jersey 07712.  Upon information and belief, HovSat, Inc. is also believed to have a business address at 1 Dag Hammarskjolk Blvd., Freehold, NJ, 07728.  See Exhibit 1.

3.     Upon information and belief, Third-Party Defendant Shant Hovnanian is an individual of last known residence at Monmouth County, New Jersey at 520 Navesink Road, Red Bank, New Jersey 07701.

4.     OMNIVERSE is not aware of the true names and capacities of DOES 1 through 10, inclusive, and therefore sues these third-party defendants by such fictitious names.  OMNIVERSE will amend this Third-Party Complaint to show the DOES' true names and capacities once they are ascertained.  Each of the fictitiously named DOE third-party defendants is responsible in some manner for the activities alleged in the Third-Party Complaint and thus is responsible for causing OMNIVERSE's damages herein.

5.     OMNIVERSE is informed and believes, an on that basis alleges, that each Third-Party Defendant is and/or was an agent, servant, co-conspirator, and/or

TROJAN LAW OFFICES
BEVERLY HILLS

-1-

employee of each of the other Defendants, and in doing the things alleged was acting within the course and scope of said agency, conspiracy, and/or employment. Therefore, each Third-Party Defendant will be collectively referred to herein as "HOVSAT."

## II.  JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over OMNIVERSE's third-party claims for common law indemnification, breach of contract, negligent misrepresentation, and fraudulent misrepresentation pursuant to 28 U.S.C. § 1332 because Omniverse One World Television, Inc. and Mr. DeMeo are diverse in citizenship from Third-Party Defendants and more than $75,000, exclusive of interests and costs, is in controversy because OMNIVERSE seeks in excess of $75,000, exclusive of interests and costs, from Third-Party Defendants.  This Court also has supplemental jurisdiction over OMNIVERSE's third-party claims pursuant to 28 U.S.C. § 1367(a) because the third-party claims are based on the same nucleus of operative facts as Plaintiff's claims arising under federal law, namely under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

7.    This Court has personal jurisdiction over Third-Party Defendants because the intellectual property rights owners of the intellectual property rights under which the third-party claims arise from reside, have a principal place of business, or conduct business within this district. A contract that substantially relied upon the intellectual property rights of intellectual property rights owners within this district reasonably anticipated the possibility of being hailed into this Court for all parties to the contract.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district and Third-Party Defendants are subject to personal jurisdiction in this district.

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

### III.  GENERAL ALLEGATIONS

**The Joint Venture Agreement**

9.      HovSat, Inc. is a cable operator company that delivered cable service to multi-dwelling units.  HOVSAT operated a headend located in New Jersey for its cable operations.  HovSat, Inc. is believed to be or have been owned and operated by Shant Hovnanian.

10.      Shant Hovnanian owned and operated a network of cable companies including SpeedusNY L.P., Grand View Cable and/or Grand View Cable Co., and HovSat, Inc.

11.      OMNIVERSE and its CEO, Jason DeMeo, negotiated, on approximately November 1, 2017, a Joint Venture Agreement ("Joint Venture Agreement") with HOVSAT.    The Joint Venture Agreement was agreed to and executed by OMNIVERSE and HOVSAT, respectively by Jason DeMeo and Shant Hovnanian. See Exhibit 2.

12.      OMNIVERSE ("OmniSat" in the agreement) was to launch an innovative new television streaming service for distributing television programming currently received under contract by HOVSAT as a multi-channel programming provider.  The venture undertook to serve underserved and low-income residential and multi-dwelling residential subscribers.  The venture later expanded its base to non-local residential subscribers who were customers of various companies that had affiliate relationships.

13.      The Joint Venture Agreement provided that HOVSAT and OMNIVERSE and their appropriate affiliates would distribute television programming using a proprietary "over the top" or OTT media streaming platform, infrastructure, and distribution relationships.  HOVSAT had previously represented to OMNIVERSE that HOVSAT or its affiliates had acquired the proper copyright licenses through an agreement between HOVSAT and DirecTV or one of its previous corporate forms.

14.   "HSAT as a multi-channel programming provider, will provide the joint venture with a co-location agreement for access to the content and technology located HSAT's Data Center facility co-located in the building receiving HSAT's licensed programming, and have access to HSAT's standard programming available during this trial period."  (Ex. 2, at p. 2.)

15.    "OMNIVERSE ONE WORLD TELEVISION, INC., as a developer of media streaming technology will contribute their software, media streaming, and media platform management capabilities together with existing relationships with media streaming partners and subscriber acquisition partners." *Id.*

16.   HOVSAT would provide its licensed content and a co-location agreement for access to the licensed content, while OMNIVERSE would provide the technical infrastructure and media platform to re-market HOVSAT's content.  In other words, HOVSAT *only* provided licensed content as part of its bargaining within the Joint Venture Agreement.  HOVSAT continuously represented before and after the Joint Venture Agreement that (1) HOVSAT had licensed content for OMNIVERSE to re-market and (2) HOVSAT's licensed content was from a previous agreement with DirecTV or one of its previous corporate forms.  OMNIVERSE would have never entered into a contract in which the content it was re-marketing was illegal or otherwise violating the copyrights of the rights holders.

17.   HOVSAT undertook to and provided a co-location agreement for access to the content and technology.  HOVSAT provided equipment and infrastructure at a data center facility in New Jersey.  A Co-Location Agreement dated September 1, 2014, can be found in Exhibit 3.  The Co-Location Agreement describes the data center facility located at 2500 Shafto Road, Tinton Falls, New Jersey "operated and controlled by Hovsat [referring to itself as Hovsat Cable], and at which Hovsat shall provide the majority of Services."  (Ex. 3, at p. 1.)

-4-

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

18.    OMNIVERSE streaming was accomplished with various streaming partners such as SotalCloud, TikiLIVE, and Vista TV.  Conditional access technology ensured that streamed content was viewable by paying subscribers (e.g., subscribers of TikiLIVE) and was considered to be highly robust with respect to preventing third-party misappropriation of streams for unlicensed re-transmission.

19.    During its period of streaming, OMNIVERSE had contracts with "partners" with HTTP Headers and login credentials that enabled them to pull OMNIVERSE streams from OMNIVERSE controlled domain names.  OMNIVERSE streams were obtained by OMNIVERSE from what OMNIVERSE believed were licensed sources, such as HOVSAT.

**OMNIVERSE Performed its Obligations Under the Joint Venture Agreement and Believed it was in Compliance with Copyright Law**

20.    OMNIVERSE believed it was marketing technology and other media delivery services thorough the Joint Venture Agreement between OMNIVERSE and HOVSAT.  OMNIVERSE believed that HOVSAT was licensed to distribute live TV under a distribution agreement or series of agreements between HOVSAT (or other Shant Hovnanian affiliates or controlled entities) and DirecTV.

21.    OMNIVERSE understood that DirecTV held the right to distribute and sub-distribute content, including copyrighted content of rights holders including Plaintiffs, by way of DirecTV's distribution agreements with television networks and movies studios.

22.    OMNIVERSE understood OMNIVERSE was not a licensed broadcaster or re-broadcaster of media content.  OMNIVERSE believed it was lawfully marketing technology and other media delivery services under the Joint Venture Agreement with partner HOVSAT's lawfully licensed content.

23.    From an OmniSat open letter, "OmniSat is a Joint Venture which is leveraging

-5-

the combined assets and capabilities of authorized multi-channel television operator HOVSAT, Inc." See Exhibit 4.

24.   OMNIVERSE also paid substantial monthly sums including licensing fees to HOVSAT for years ranging from approximately $9,000 to over $46,000. OMNIVERSE made these payments under the belief and understanding that these payments were for HOVSAT's copyright licenses through its agreement with DirecTV. OMNIVERSE further believed that DirecTV was, in turn, receiving the appropriate fees from HOVSAT, with whom OMNVIERSE believed there was a direct contract relationship of a confidential nature. These payments would have appropriately made their way to Plaintiffs for their copyrights through distribution agreements and the like. OMNIVERSE made such payments at least from approximately January 2018 to approximately March 2019.

25.   HOVSAT understood OMNIVERSE's payments were for licensing fees for OMNIVERSE to lawfully re-market copyrighted content through internet streaming distribution. HOVSAT made multiple communications to ensure these payments were made.

26.   OMNIVERSE also made substantial efforts to ensure that streams were secured to protect the copyright holders. As demonstrated from emails approximately dated June 2018, OMNIVERSE changed its streaming operations after confirming that certain streams were hackable.

### HOVSAT Represented to OMNIVERSE That HOVSAT
### Had Valid Licenses From DirecTV for Television Streaming

27.   Investors in OMNIVERSE advanced millions of dollars to OMNIVERSE to purchase equipment and infrastructure and to finance the growth of OMNIVERSE under the belief that there was a contractual relationship for copyright licenses between HOVSAT and DirecTV as described above that was in full compliance with

TROJAN LAW OFFICES
BEVERLY HILLS

-6-

the law.  OMNIVERSE further believed said licenses allowed OMNIVERSE to operate as described above in full compliance with the law.

28.     Between the approximate dates of November 29, 2017, to December 9, 2017, OMNIVERSE investor David Cash made multiple email communications with Shant Hovnaninan, and later visited Shant Hovnanian and an OMNIVERSE distributing partner. OMNIVERSE investor DAVID CASH met Shant Hovnanian in New Jersey. OMNIVERSE investors and partners continued to make significant financial commitments to OMNIVERSE based on the belief that the licenses HOVSAT represented it had.

29.     OMNIVERSE and its investors believed that a licensing agreement between HOVSAT and DirecTV existed based on HOVSAT representations.  An email from approximately May 21, 2018, described the agreement between HOVSAT and DirecTV as a "distribution license you have from DirecTV" and "unique."

30.     OMNIVERSE also had its equipment upgraded with DirecTV equipment on approximately November 2018.   Email communications indicated that Shant Hovnanian represented that he was in communications with DirecTV to upgrade equipment at a headend located in New Jersey.  In conjunction with the Joint Venture Agreement, investments to OMNIVERSE, and licensing payments to HOVSAT, these emails further indicate that HOVSAT had represented that it had a contractual and licensing relationship with DirecTV.

### OMNIVERSE's Efforts to Demonstrate its Legal Operation
### Under the Joint Venture Agreement

31.   OMNIVERSE   accordingly   disagrees   with   Plaintiffs'   claim   that   that OMNIVERSE copied or stored or caused to be copied or stored copyrighted content of Plaintiffs or otherwise violated Plaintiffs' copyrights.  OMNIVERSE streamed what it believed to be licensed content that OMNIVERSE paid significant licensing

TROJAN LAW OFFICES
BEVERLY HILLS

fees to HOVSAT to lawfully stream.  OMNIVERSE believed these significant fees to HOVSAT were to be accounted appropriately to DirecTV for the respective copyright licensing rights, which in turn would have been accounted for appropriately to Plaintiffs.  See Exhibit 5 for Plaintiffs' Complaint 2:19-cv-01156 MWF(ASx).

32.   OMNIVERSE has made multiple demands to HOVSAT for proof to corroborate HOVSAT's license relationships and for material assistance in defending the claims in suit.  OMNIVERSE also agreed to a subpoena to DirecTV to obtain what OMNIVERSE expected to include archived records dating back to the 1990s and early 2000s between HOVSAT or related entities and DirecTV or its predecessor companies.

33.   Thus far, the subpoenas have not located historical records of significance earlier than 2003.  It is unknown if such records referenced in the preceding paragraph will be found in discovery.

34.   Additionally, DirecTV productions do not reflect the receipt of the license fees from HOVSAT even though payments, as described above, were made by OMNIVERSE to HOVSAT.  OMNIVERSE and its investors were aware of accounting records showing payments to HOVSAT and believed DirecTV's records would show receipt of the appropriate license fees from HOVSAT to DirecTV.

35.   OMNIVERSE made efforts to learn what happened regarding the above described payments and master distribution or other contracts with DirecTV or DirecTV's predecessors that antedated 2003.  OMNIVERSE management directed the cessation of all streaming services to residential subscribers, effective May 31, 2019, and determined that the company would be wound-up and go out of business under the provisions of Delaware law.

36.   OMNIVERSE winding up operations and going out of business will result in

considerable loss of investor funds.  OMNIVERSE accounting records and tax returns will not show that OMNIVERSE profited during operations.  It is believed that OMNIVERSE will have lost substantial sums.

37.   OMNIVERSE previously announced by press conference that it intended to continue to deliver multiple-dwelling unit related services.  Omniverse will be unwinding its business operations and make commercially reasonable dispositions of its equipment and assets in accordance with Delaware law.

38.   OMNIVERSE has suspended its above described payments to HOVSAT given the above described circumstances.

39.   Upon information and belief, Shant Hovnanian is in Armenia.  Mr. Hovnanian was a defendant earlier this year in a tax enforcement proceeding exceeding $16 million.  *See United States v. Hovnanian*, No. CV 18-15099, 2019 WL 2206767, at *1 (D.N.J. May 22, 2019).  Mr. Hovnanian's attorneys have not come forward to support the legal position of HOVSAT.

## IV.  First Count:

## Common Law Indemnification

40.   OMNIVERSE re-alleges the allegations set forth in paragraphs 1 though 40 above, as if fully set forth herein.

41.   The Agreements between OMNIVERSE and HOVSAT formed a legal and special relationship between those parties that existed prior to any of the copyright infringement alleged in Plaintiffs' Complaint.

42.   This is a special relationship that gives rise to a duty for HOVSAT to indemnify and hold harmless OMNIVERSE for any damages that OMNIVERSE may suffer in connection with entering the Agreements with HOVSAT.

43.   Plaintiffs allege that they were damaged under a theory of copyright infringement from OMNIVERSE's streaming operations and business that was in

-9-

TROJAN LAW OFFICES
BEVERLY HILLS

fact a remarketing of what OMNIVERSE believed to be HOVSAT's licensed content.

44.     OMNIVERSE undertook its streaming operations and business because (1) OMNIVERSE believe it was operating with copyright law by operating under HOVSAT's copyright licenses through the Joint Venture Agreement, (2) HOVSAT represented that HOVSAT's copyright licenses existed and were valid for OMNIVERSE to operate under, (3) HOVSAT accepted payments from OMNIVERSE as part of the licensing fees from the Joint Venture Agreement for HOVSAT's purported copyright licenses, and (4) HOVSAT continued to represent said copyright licenses existed and were valid and continued to accept licensing fees for such.

45.     The damages Plaintiffs allege in their Complaint, if any, are a direct result of HOVSAT's acts or omissions.

46.     OMNIVERSE is without fault in causing Plaintiffs' alleged damages.

47.     The relationship between OMNIVERSE and HOVSAT establishes a right of indemnity in OMNIVERSE against HOVSAT regarding the allegations in Plaintiffs' Complaint.

48.     Should Plaintiffs be awarded any sums, including damages, costs, or attorneys' fees against OMNIVERSE, any such liability on the part of OMNIVERSE results from the acts or omissions of HOVSAT.

49.     Accordingly, HOVSAT should indemnify OMNIVERSE for all amounts and losses for which OMNIVERSE may be liable to Plaintiffs, including any damages, costs, attorneys' fees, injunctions, or any other sums assessed against OMNIVERSE.

/////

/////

## V.  Second Count:
## Breach of Contract

TROJAN LAW OFFICES
BEVERLY HILLS

50. OMNIVERSE re-alleges the allegations set forth in paragraphs 1 though 50 above, as if fully set forth herein.

51. OMNIVERSE and HOVSAT entered into valid and binding contracts, namely the co-location agreement, Joint Venture Agreement, and any agreements containing modifications thereto (collectively, the Contract).

52. In the Contract, HOVSAT represented that it had lawful copyright licenses under which OMNIVERSE would remarket television content provided by HOVSAT.

53. OMNIVERSE performed its obligations under the Agreements.

54. Specifically, OMNIVERSE paid all fees due to HOVSAT under the Contract.

55. If Plaintiffs' allegations are true, specifically that OMNIVERSE violated Plaintiffs' copyrights by streaming video content under the Contract, then HOVSAT breached the terms of the Contract by misrepresenting that HOVSAT had a valid copyright license (from DirecTV or otherwise) under from which OMNIVERSE could market a television streaming business operation.

56. HOVSAT further breached the Contract by continuously accepting payments from OMNIVERSE under the guise that such payments were for licensing fees for HOVSAT's purported copyright licenses.

57. As a result of HOVSAT's breaches of the Contract, OMNIVERSE suffered damages, including: (a) damages incurred as a result of Plaintiffs' lawsuit, including the amount of any judgment entered in favor of Plaintiffs against OMNIVERSE and any losses from an injunction entered in favor of Plaintiffs against OMNIVERSE, as well as OMNIVERSE's own attorneys' fees and costs; (b) the amount owed from licensing payments made in good faith by OMNIVERSE to HOVSAT for licensing costs under the Agreements, plus interest, penalties, attorneys' fees, and costs; (c) financial losses in the form of lost capital as a result of the collapse of OMNIVERSE

TROJAN LAW OFFICES
BEVERLY HILLS

from the failure of HOVSAT to honor the Contract; and (d)  loss of future profits that Omniverse would have made if HOVSAT had honored the Contract.

## VI. Third Count:

## Negligent Misrepresentation

58.    OMNIVERSE re-alleges the allegations set forth in paragraphs 1 through 58 above, as if fully set forth herein.

59.    HOVSAT induced OMNIVERSE to enter into the Agreements by representing to OMNIVERSE that HOVSAT had proper copyright licenses under which OMNIVERSE could lawfully remarket a television streaming business operation under the Joint Venture Agreement.

60.    If Plaintiffs' allegations in this case are determined to be true, then HOVSAT's representations to OMNIVERSE were false.

61.    Upon information and belief, HOVSAT was a New Jersey corporation operated by Shant Hovnanian, a New Jersey resident, when HOVSAT represented that HOVSAT had valid copyright licenses for television streaming distribution through a prior agreement with DirecTV, its previous corporate forms, or otherwise.

62.    HOVSAT's representations to OMNIVERSE were at least made on or about November 1, 2017, in the Joint Venture Agreement.

63.    HOVSAT's representations were made to OMNIVERSE in writing through the Joint Venture Agreement.

64.    If HOVSAT's representations were false, HOVSAT either knew or should have known the representations were false; thus, HOVSAT was at least negligent in making the representations to OMNIVERSE.

65.    In making the representations, HOVSAT knew or should have known that the representations would induce OMNIVERSE to act by contracting through at least the Joint Venture Agreement and making payments to HOVSAT for the represented

-12-

licenses.

66.    OMNIVERSE was, in fact, induced to enter in the Joint Venture Agreement with HOVSAT as a result of HOVSAT's misrepresentations regarding the license(s).

67.    OMNIVERSE suffered damages as a result of its reasonable and justifiable reliance on HOVSAT's representations.  Such damages may include: (a) damages incurred as a result of Plaintiffs' lawsuit, including the amount of any judgment entered in favor of Plaintiffs against OMNIVERSE and any losses from an injunction entered in favor of Plaintiffs against OMNIVERSE, as well as OMNIVERSE's own attorneys' fees and costs; (b) the amount owed from licensing payments made in good faith by OMNIVERSE to HOVSAT for licensing costs under the Agreements, plus interest, penalties, attorneys' fees, and costs; (c) financial losses in the form of lost capital as a result of the collapse of OMNIVERSE from the failure of HOVSAT to honor the Contract; and (d)  loss of future profits that Omniverse would have made if HOVSAT had not made the misrepresentations.

## VII.   Fourth Count:
## Fraudulent Misrepresentation

68.    OMNIVERSE re-alleges the allegations set forth in paragraphs 1 through 67 above, as if fully set forth herein.

69.    HOVSAT's representations to OMNIVERSE in the Joint Venture Agreement that HOVSAT had acquired (through an agreement with DirecTV, its past corporate forms, or otherwise) copyright licenses under which OMNIVERSE could lawfully remarket a television streaming business operation under the Joint Venture Agreement.

HOVSAT's representations to OMNIVERSE were made at least on or about November 1, 2017.

70.    HOVSAT's representations to OMNIVERSE were at least made on or about

-13-

TROJAN LAW OFFICES
BEVERLY HILLS

November 1, 2017, in the Joint Venture Agreement.

71.    HOVSAT's representations were made to OMNIVERSE in writing through the Joint Venture Agreement and modifications thereto.

72.    HOVSAT knew that the representations made to OMNVIERSE were false when HOVSAT made them.

73.    HOVSAT induced OMNIVERSE into entering the Agreements by representing to OMNIVERSE in the Agreements that HOVSAT had acquired valid copyright licenses (through an agreement with DirecTV, its past corporate forms, or otherwise) under which OMNIVERSE could lawfully remarket a television streaming business operation under the Joint Venture Agreement.

74.    Upon information and belief, HOVSAT was a New Jersey corporation operated by Shant Hovnanian, a New Jersey resident, when HOVSAT represented that HOVSAT had valid copyright licenses for television streaming distribution through a prior agreement with DirecTV, its previous corporate forms, or otherwise.

75.    In making the representations, HOVSAT knew or should have known that the representations would induce OMNIVERSE to act by contracting through at least the Agreements and making payments to HOVSAT for the represented licenses under the Joint Venture Agreement.

76.    OMNIVERSE suffered damages as a result of its reasonable and justifiable reliance on HOVSAT's representations.  Such damages may include: (a) damages incurred as a result of Plaintiffs' lawsuit, including the amount of any judgment entered in favor of Plaintiffs against OMNIVERSE and any losses from an injunction entered in favor of Plaintiffs against OMNIVERSE, as well as OMNIVERSE's own attorneys' fees and costs; (b) the amount owed from licensing payments made in good faith by OMNIVERSE to HOVSAT for licensing costs under the Agreements, plus interest, penalties, attorneys' fees, and costs; (c) financial losses in the form of lost

-14-

capital as a result of the collapse of OMNIVERSE from the failure of HOVSAT to honor the Contract; and (d)  loss of future profits that Omniverse would have made if HOVSAT had not made the misrepresentations.

## VIII.  Fifth Count:

## Breach of Implied Warranty of Title and Against Infringement

77.    OMNIVERSE re-alleges the allegations set forth in paragraphs 1 though 77 above, as if fully set forth herein.

78.    § 2-312(1) of the Universal Commercial Code provides, "there is in a contract for a sale a warranty by the sell that (a) the title conveyed shall be good, and its transfer rightful; and (b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge."

79.    § 2-312(3) of the Universal Commercial Code provides, "Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications."

80.    OMNIVERSE's, through the Contract, purchased HOVSAT's content and the appropriate licenses to lawfully re-market said content (collectively, the Content), represented by HOVSAT to be properly licensed through a licensing and distribution agreement between HOVSAT and DirecTV.

81.    HOVSAT, as a cable operator company, was a merchant regularly dealing in goods of the kind, namely copyright content, licenses, distribution licenses, and the like for copyrighted content.

82.    The Content HOVSAT sold by the Contract is currently subject to a copyright

-15-

infringement lawsuit.  HOVSAT represented the Content sold through the Contract was in good standing and properly licensed.

83.     OMNIVERSE did not furnish specifications regarding the Content provided by the Contract.

84.     OMNIVERSE and HOVSAT did not otherwise form another agreement that changed the Content provided by the Contract.  Omniverse continued to make payments to HOVSAT for the Content until at least approximately March, 2019.

85.     If Plaintiffs' allegations are true, specifically that OMNIVERSE violated Plaintiffs' copyrights by streaming video content under the Contract, then HOVSAT failed to deliver its goods, the Content, to OMNIVERSE with good title or "free of the rightful claim of any third person by way of infringement or the like."

86.     OMNIVERSE suffered damages as a result HOVSAT's breach of warranty. Such damages may include: (a) damages incurred as a result of Plaintiffs' lawsuit, including the amount of any judgment entered in favor of Plaintiffs against OMNIVERSE and any losses from an injunction entered in favor of Plaintiffs against OMNIVERSE, as well as OMNIVERSE's own attorneys' fees and costs; (b) the amount owed from licensing payments made in good faith by OMNIVERSE to HOVSAT for licensing costs under the Agreements, plus interest, penalties, attorneys' fees, and costs; (c) financial losses in the form of lost capital as a result of the collapse of OMNIVERSE from the failure of HOVSAT to honor the Contract; and (d)  loss of future profits that Omniverse would have made if HOVSAT had not breached its implied warranties of title and against infringement.

## IX.   Sixth Count:

### Breach of Implied Covenant of Good Faith and Fair Dealing

87.     OMNIVERSE re-alleges the allegations set forth in paragraphs 1 though 87 above, as if fully set forth herein.

TROJAN LAW OFFICES
BEVERLY HILLS

88.     § 1-304 of the Universal Commercial Code provides, "Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement."

89.     OMNIVERSE and HOVSAT entered in the Contract whereby OMNIVERSE purchased the Content from HOVSAT.

90.     HOVSAT owed OMNIVERSE a duty of good faith by being a party to the Contract.  Additionally, HOVSAT owed a higher duty of good faith as a merchant of the good sold by the Contract, the Content.  In fulfilling its duty to act in good faith, HOVSAT at least must have ensured that the Content it sold to OMNIVERSE was valid and properly licensed.

91.     HOVSAT knew or had reasons to know it was required to ensure that the Content it sold to OMNIVERSE was valid and properly licensed.  HOVSAT breached its duty of good faith by at least not ensuring that the Content sold was valid and properly licensed.

92.     HOVSAT made multiple communications to ensure that HOVSAT received payments from OMNIVERSE for the Content sold by the Contract.  This was a further breach of good faith because HOVSAT's actions to ensure payments for the Content that HOVSAT had not ensured was valid was unfaithful to the purposes of the Contract by further misleading OMNIVERSE regarding the validity and lawfulness Content.

93.     HOVSAT also interfered with OMNIVERSE's rights to receive the benefits of the Contract by misleading OMNIVERSE regarding the validity and lawfulness of the Content through material misrepresentations.

94.     OMNIVERSE fulfilled its obligations under the Contract by making substantial and regular agreed payments to HOVSAT.

95.     HOVSAT was a cable operator company and merchant regularly in goods such

-17-

TROJAN LAW OFFICES
BEVERLY HILLS

as the Content.  OMNIVERSE had a justified expectation that the Content HOVSAT sold would be valid.  OMNIVERSE's justified expectations were denied because HOVSAT sold OMNVIERSE and invalid License.

96.    If Plaintiffs' allegations are true, specifically that OMNIVERSE violated Plaintiffs' copyrights by streaming video content under the Contract, then HOVSAT breached its "obligation of good faith in its performance and enforcement" of the Contract by selling OMNIVERSE an invalid License and further misleading OMNIVERSE regarding the validity of the Content.

97.    OMNIVERSE suffered damages as a result HOVSAT's breach of implied covenant of good faith and fair dealing.  Such damages may include: (a) damages incurred as a result of Plaintiffs' lawsuit, including the amount of any judgment entered in favor of Plaintiffs against OMNIVERSE and any losses from an injunction entered in favor of Plaintiffs against OMNIVERSE, as well as OMNIVERSE's own attorneys' fees and costs; (b) the amount owed from licensing payments made in good faith by OMNIVERSE to HOVSAT for licensing costs under the Agreements, plus interest, penalties, attorneys' fees, and costs; (c) financial losses in the form of lost capital as a result of the collapse of OMNIVERSE from the failure of HOVSAT to honor the Contract; and (d)  loss of future profits that Omniverse would have made if HOVSAT had not breached its implied covenant of good faith and fair dealing.

**PRAYER FOR RELIEF**

WHEREFORE, Third-Party Plaintiffs OMNIVERSE pray for judgment as follows:

1.    In the event judgment is entered against OMNIVERSE and in favor of Plaintiffs in the related matter Paramount Pictures, Inc., *et al*., v. Omniverse One World Television Inc. and Jason M. DeMeo, judgment be entered in favor of Third-Party Plaintiffs, OMNIVERSE, and against Third-Party Defendants, HOVSAT, in

TROJAN LAW OFFICES
BEVERLY HILLS

the amount of any judgment entered against OMNVIERSE, and that OMNIVERSE be awarded its attorneys' fees, interest, the cost of this suit, losses from equitable relief, and any other relief the Court finds just and proper.

2.      Judgment in OMNIVERSE's favor and against Third-Party Defendants, HOVSAT, for damages incurred as a result of Plaintiffs' lawsuit, including the amount of any judgment entered in favor of Plaintiffs against OMNIVERSE, as OMNIVERSE's own attorneys' fees and costs, the payments made by OMNIVERSE under the Agreements, including at least the Joint Venture Agreement, and interest.

3.      Judgment in OMNIVERSE's favor and against Third-Party Defendants, HOVSAT, for damages incurred as a result of Plaintiffs' lawsuit, as interest, penalties, attorneys' fees, the cost of this suit.

4.      Judgment in OMNIVERSE's favor and against Third-Party Defendants, HOVSAT, for damages incurred as a result of Plaintiffs' lawsuit, as losses from any equitable relief against OMNIVERSE.

5.  An award of all financial losses in the form of lost capital as a result of the collapse of OMNIVERSE from the failure of HOVSAT to honor the Contract;

6.  An award of all losses of future profits that Omniverse would have made if HOVSAT had not made the misrepresentations.

7.  For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Third-Party Plaintiff, OMNIVERSE, hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

TROJAN LAW OFFICES

by

-19-

1

2

3    September 25, 2019                          /s/R. Joseph Trojan

4                                               R. Joseph Trojan
                                                Attorneys for Defendants and Third-
5                                               Party Plaintiff,
                                                Omniverse One World Television, Inc.
6                                               and Jason M. DeMeo

7
                                                BYRD CAMPBELL, P.A.
8
                                                by
9
                                                /s/Stephen D. Milbrath
10                                              Stephen D. Milbrath
                                                Attorneys for Defendants and Third-
11                                              Party Plaintiff,
                                                Omniverse One World Television, Inc.
12                                              and Jason M. DeMeo

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROJAN LAW OFFICES
BEVERLY HILLS