R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA  90212
Telephone:   310-777-8399
Facsimile:   310-777-8348

STEPHEN D. MILBRATH (*pro hac vice*)
smilbrath@byrdcampbell.com
BYRD CAMPBELL, P.A.
180 N. Park Avenue, Suite 2A
Winter Park, FL, 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286

Attorneys for Defendants and Third-Party Plaintiff,
OMNIVERSE ONE WORLD TELEVISION, INC. and JASON M. DEMEO

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

PARAMOUNT PICTURES
CORPORATION; COLUMBIA
PICTURES INDUSTRIES, INC.;
DISNEY ENTERPRISES, INC.;
TWENTIETH CENTURY FOX FILM
CORPORATION; WARNER BROS
ENTERTAINMENT, INC.;
UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP;
UNIVERSAL TELEVISION LLC;
and UNIVERSAL CONTENT
PRODUCTIONS LLC,
                    Plaintiffs,
          v.
OMNIVERSE ONE WORLD
TELEVISION, INC.; JASON M.
DEMEO,
                    Defendants.

OMNIVERSE ONE WORLD
TELEVISION, INC.,
          Third-Party Plaintiff,
          v.
HovSat, Inc.; Shant Hovnanian; and
DOES 1-10, inclusive,
          Third-Party Defendants.

CASE NO. 2:19-cv-01156-MFW-ASx

**THIRD-PARTY PLAINTIFF OMNIVERSE ONE WORLD TELEVISION, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT AGAINST THIRD-PARTY DEFENDANT HOVSAT, INC.**

Date: February 24, 2020
Time:  11:30 am
Courtroom 5A

Judge: Hon. Michael W. Fitzgerald

TROJAN LAW OFFICES
BEVERLY HILLS

# Table of Contents

**PAGE**

I.    INTRODUCTION ...................................................................... 1

II.    STATEMENT OF FACTS ........................................................ 2

III.    ARGUMENT ............................................................................ 5

    A.    Legal Standard for Granting Default Judgment ................................ 5

    B.    Third-Party Plaintiff is Entitled to Default Judgment on Balancing the *Eitel* Factors for Default Judgment ............................. 5

        1.    Possibility of Prejudice to Omniverse ....................................... 6

        2.    Merits of Omniverse's Substantive Claim and Sufficiency of the Third-Party Complaint ................................. 7

            a.    Breach of Contract (Count 2 of TPC) ............................ 7

            b.    Negligent Misrepresentation (Count 3 of TPC) ...................................................................... 8

            c.    Fraudulent Misrepresentation (Count 4 of TPC) ...................................................................... 9

            d.    Breach of Implied Warranty of Title and Against Infringement (Count 5 of TPC) ..................... 10

            e.    Breach of Implied Covenant of Good Faith and Fair Dealing (Count 6 of TPC) ............................. 12

        3.    Sum of Money at Stake ............................................................ 13

        4.    Possibility of Dispute Concerning Material Facts ................... 13

        5.    Possibility of Excusable Neglect by HovSat .......................... 14

MOTION FOR DEFAULT JUDGMENT

TROJAN LAW OFFICES
BEVERLY HILLS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.    Requested Remedies .......................................................... 15

1.    Omniverse is Entitled to Damages from HovSat
Equaling the Amount of Judgment Entered Against
Omniverse in the Above-Captioned Matter ............................ 15

IV.    CONCLUSION ........................................................................... 17

TROJAN LAW OFFICES
BEVERLY HILLS

MOTION FOR DEFAULT JUDGMENT

1

2

## Table of Authorities

3

*Cases*                                                                    PAGE(S)

4

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,

5

    158 Cal.App.4th 226, 70 Cal.Rptr.3d 199 (2007*)*.........................................8

6

*Croeni v. Goldstein*,

7

    21 Cal.App.4th 754, 26 Cal.Rptr.2d 412 (1994).............................................9

8

*E.D.C. Techs., Inc. v. Seidel*,

9

    216 F. Supp 3d 1012 (N.D. Cal. 2016)............................................................7

10

*Eitel v. McCool*,

11

    782 F.2d 1470 (9th Cir. 1986).........................................................................5

12

*Frelich v. Roc Asset Sols., LLC*,

13

    2016 WL 3748723 (N.D. Cal. June 8, 2016) (slip copy),

    *report and recommendation adopted*, 2016 WL 3747616 (N.D.

14

    Cal. July 11, 2016).........................................................................................7

15

*Geddes v. United Financial Group*,

16

    559 F.2d 557 (9th Cir. 1977)..........................................................................5

17

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,

18

    235 Cal. App. 3d 1220 (Ct. App. 1991) ......................................................15

19

*Pepsico, Inc. v. Cal. Sec. Cans*,

20

    238 F.Supp.2d 1172 (C.D. Cal. 2002)..........................................................13

21

*Philip Morris USA, Inc. v. Castworld Products, Inc.*,

22

    219 F.R.D. 494 (C.D. Cal. 2003) ...............................................7, 13, 14, 15

23

*Small v. Fritz Cos., Inc.*,

24

    30 Cal.4th 167, 132 Cal.Rptr.2d 490, 65 P.3d 1255 (2003).........................9

25

*Slater v. Blackwood*,

26

    15 Cal. 3d 791, 795 (1975) ..........................................................................16

27

28

MOTION FOR DEFAULT JUDGMENT

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

*Speirs v. BlueFire Ethanol Fuels, Inc.*,
   243 Cal. App. 4th 969 (2015)...............................................................15, 16

*Tavaglione v. Billings.*,
   4 Cal. 4th 1150, 1158 (1993),
   *as modified* (Apr. 28, 1993) ........................................................................16

*TeleVideo Sys., Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987).....................................................................5, 13

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015).......................................................8, 9

*Wilson v. 21st Century Ins. Co.*,
   42 Cal. 4th 713, 171 P.3d 1082 (2007),
   *as modified* (Dec. 19, 2007) ......................................................................12

**Codes, Rules, & Statutes**                        **PAGE(S)**

Cal. Civ. Code § 1709 (West) ..........................................................................16

Cal. Civ. Code § 3300 (West) ..........................................................................15

Federal Rule of Civil Procedure 55 ...........................................................1, 2, 5

Local Rule 55-1 ..............................................................................................1, 2

Uniform Commercial Code § 1-304....................................................................7, 12

Uniform Commercial Code § 2-312.................................................................7, 10-11

MOTION FOR DEFAULT JUDGMENT

TROJAN LAW OFFICES
BEVERLY HILLS

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and Local Rule 55-1, Third-Party Plaintiff Omniverse One World Television, Inc. ("Omniverse") hereby applies to the Court for Default Judgment against Third-Party Defendant HovSat, Inc. ("HovSat").

## I.   INTRODUCTION

On September 25, 2019, Third-Party Plaintiff Omniverse filed a Third-Party Complaint in the above-captioned action against Third-Party Defendant HovSat for common law indemnification, breach of contract, negligent misrepresentation, fraudulent misrepresentation, breach of implied warranty of title and against infringement, and breach of implied covenant of good faith and fair dealing. (*See* Dkt. #48 ("TPC.").) Omniverse successfully served the current registered agent for HovSat, Mr. Arthur P. Havinghorst II, Esq., with the summons and TPC on October 9, 2019. (*See* Dkt. #56.) HovSat's response to the TPC was due on or before October 30, 2019. (*See id.*)

HovSat has not responded to the TPC, has not appeared before the Court, nor attempted to seek an extension of time to respond to the TPC. (*See* Declaration of R. Joseph Trojan ("Trojan Decl."), ¶ 5.) The only response received on behalf of HovSat was a letter from Mr. Havinghorst, which was filed with the Court on November 12, 2019, nearly two weeks after the response to the TPC was due. (*See* Dkt. #59.)

In Mr. Havinghorst's letter, Mr. Havinghorst claims without support that he is not the current registered agent for HovSat. (*See id.*) Yet, Mr. Havinghorst was at the time of service, and still was at the time of entry of default by the Clerk, the registered agent of process for HovSat. (*See* Dkt. #68, Exhibit 2; *see also* Dkt. #70.) In fact, as of January 23, 2020, Mr. Havinghorst is *still* the registered agent for HovSat. (*See* Trojan Decl. at ¶ 4, Ex. 1.) While Mr. Havinghorst may claim he is not the

MOTION FOR DEFAULT JUDGMENT

current agent for HovSat, he has continually failed to resign as the registered agent, and thus service upon him was proper.

Pursuant to the applicable New Jersey Corporate Statutes, Mr. Havinghorst is still the proper agent of process for HovSat because he has not notified the New Jersey Secretary of State of his resignation. (*See* Dkt. #68.)  Additionally, HovSat may still be sued under the Corporate Status of New Jersey while their certificate of incorporation is revoked. (*See id.*)  As such, HovSat was properly served, and has failed to timely answer the Compliant. (*See id.*)  Consequently, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the default against HovSat was entered by the Clerk on December 27, 2019 upon Omniverse's application for entry of default against HovSat. (*See* Dkt. #70.)

Omniverse has satisfied the requirements of Rule 55(b) of the Federal Rules of Civil Procedure and Local Rule 55-1 for default judgment and respectfully requests that the Court grant Omniverse's Motion for Default Judgment against HovSat for $50,000,000 in the amount of the judgment granted against Omniverse in the above-captioned action. (*See* Dkt. #63.)

## II.   STATEMENT OF FACTS

HovSat is a cable operator company that delivered cable services to multi-dwelling units, and operated a headend located in New Jersey for its cable operations. (*See* TPC (Dkt. #48), ¶ 9.)  HovSat is owned and controlled by Shant Hovnanian. (*Id.*)  Omniverse, and its CEO, Jason DeMeo, negotiated a Joint Venture Agreement ("JVA") with HovSat on November 1, 2017. (*Id.* at ¶ 11.)  The JVA was executed by Omniverse and HovSat, respectively by Jason DeMeo and Shant Hovnanian. (*Id.*, *see also id.* at Exhibit 2.)

Under the JVA, Omniverse launched an innovative new television streaming service for distributing television programming to serve underserved and low-income

TROJAN LAW OFFICES
BEVERLY HILLS

residential and multi-dwelling residential subscribers.  (*See* TCP, ¶ 12.)  The television programming received by Omniverse was represented to be under contract by HovSat.  (*Id.*)  The venture later expanded to non-local residential subscribers who were customers of various companies that had affiliated relationships.  (*Id.*)

The JVA provided that HovSat and Omniverse and their appropriate affiliates would distribute television programming using a proprietary media streaming platform.  (*Id.* at ¶ 13.)  HovSat had represented to Omniverse that HovSat had acquired the proper copyright licenses through an agreement between HovSat and DirecTV.  (*Id.*)

According to the JVA, HovSat (referred to as HSAT in the JVA), "will provide the joint venture with a co-location agreement for access to the content and technology located HSAT's Data Center facility co-located in the building receiving HSAT's licensed programming, and have access to HSAT's standard programming available during this trial period." (*Id.* at ¶ 14, *see also id.* at Exhibit 2.)  Additionally, "OMNIVERSE ONE WORLD TELEVISION, INC., as a developer of media streaming technology will contribute their software, media streaming, and media platform management capabilities together with existing relationships with media streaming partners and subscriber acquisition partners." (*Id.* at ¶ 15, *see also id.* at Exhibit 2.)

Therefore, under the JVA, HovSat would provide its licensed content and a co-location agreement for access to the licensed content, while Omniverse would provide the technical infrastructure and media platform to re-market HovSat's content.  (*Id.* at ¶ 16.)  HovSat represented before and after the JVA that (1) HovSat had licensed content for Omniverse to re-market and (2) HovSat's licensed content arose out of HovSat's contract with DirecTV.  (*Id.*)  Omniverse would have never entered into a contract in which the content it was re-marketing was illegal or

TROJAN LAW OFFICES
BEVERLY HILLS

otherwise violating the copyrights of the rights holders.  (*Id.*)

HovSat additionally entered into a Co-Location Agreement ("CLA"), dated September 1, 2014, for access to the content and technology.  (*Id.* at ¶ 17, *see also id.* at Exhibit 3.)  Under the CLA, HovSat provided equipment and infrastructure at a data center in New Jersey.  (*Id.*)  The CLA describes the data center facility as "operated and controlled by Hovsat, and at which Hovsat shall provide the majority of Services." (*Id.*)

Omniverse believed it was marketing media delivery services through the JVA, and believed that HovSat was licensed to distribute live TV under a distribution agreement between HovSat and DirecTV.  (*Id.* at ¶ 20.)  Omniverse understood that DirecTV held the right to distribute and sub-distribute content by way of DirecTV's distribution agreement with television networks and movies studios.  (*Id.* at ¶ 21.)

Omniverse paid substantial monthly sums, including licensing fees, to HovSat for years.  (*Id.* at ¶ 24.)  These payments ranged from approximately $9,000 to over $46,000.  (*Id.*)  Omniverse made these payments under the belief and understanding that these payments were for HovSat's copyright licenses through its agreement with DirecTV.  (*Id.*)  Omniverse believed that DirecTV, in turn, was receiving the appropriate fees from HovSat.  (*Id.*)  HovSat understood that Omniverse's payments were for licensing fees for Omniverse to lawfully re-market copyrighted content through internet streaming distribution.  (*Id.* at ¶ 25.)  Investors in Omniverse advanced millions of dollars to Omniverse to purchase equipment and infrastructure based upon HovSat's representation that a contractual relationship for copyrighted content existed between HovSat and DirecTV.  (*Id.* at ¶ 27.)  Furthermore, Omniverse believed said licenses allowed Omniverse to operate as previously described in full compliance with the law.  (*Id.*)

Omniverse's equipment was upgraded with DirecTV equipment in

MOTION FOR DEFAULT JUDGMENT

TROJAN LAW OFFICES
BEVERLY HILLS

approximately November, 2018.  (*Id.* at ¶ 30.)   Shant Hovnanian represented in emails that he was in communications with DirecTV to upgrade the equipment at the headend location in New Jersey.  (*Id.*)  These emails Omniverse relied on further indicate that HovSat had a licensing relationship with DirecTV.  (*Id.*)

As a result of a subpoena to DirecTV in this case, Omniverse learned that HovSat had not been paying DirecTV the license fees.  (*Id.* at ¶ 34.)  As a result, Omniverse management directed the cessation of all streaming services to residential subscribers, effective May 31, 2019.  (*Id.* at ¶ 35.)

## III.   ARGUMENT

### A.   Legal Standard for Granting Default Judgment

FRCP 55(b)(2) authorizes the Court on application to enter a default judgment against a defendant provided the Clerk has entered the defendant's default under FRCP 55(a).

The Ninth Circuit has instructed that a district court may consider the following factors in exercising its discretion to award a default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In applying this discretionary standard, the factual allegations contained in the complaint are deemed to be true except those relating to the amount of damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)).

### B.   Third-Party Plaintiff is Entitled to Default Judgment on Balancing

MOTION FOR DEFAULT JUDGMENT

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
BEVERLY HILLS

**the *Eitel* Factors for Default Judgment**

On balancing the above factors, it is clear that Third-Party Plaintiff Omniverse is entitled to default judgment and this Court must enter default judgment against Third-Party Defendant HovSat in this action.

**1.      Possibility of Prejudice to Omniverse**

Omniverse would be severely prejudiced if the default judgment is not entered against HovSat.  HovSat is the party responsible for the copyright infringement alleged by the Plaintiffs by way of misrepresenting to Omniverse that HovSat actually received a license to distribute the copyrighted content through agreements with DirecTV.  (*See* TPC at ¶¶ 13, 16, 27-35.)  Due to HovSat's misrepresentations and fraudulent claims regarding licensing the copyrighted material, Omniverse was forced to wind up business, and stipulate to a $50,000,000 judgment against Omniverse.  (*See id*. at ¶¶ 35-37; *see also* Dkt. #63.)  This legal liability was caused by the misrepresentations of HovSat.  Permitting HovSat to escape liability for their primary role is causing injury to Plaintiffs would greatly prejudice Omniverse.

Omniverse successfully served the registered agent of HovSat in line with the Federal Rules of Civil Procedure, and HovSat's registered agent accepted service on behalf of HovSat.  (*See* Dkt. #56-1.)  Yet, HovSat still failed to answer the TPC or request the court for an extension of time.  (*See* Trojan Decl. at ¶ 5.)  The only attempted communication was a letter Mr. Havinghorst filed with the Court nearly two weeks *after* the Answer was due, claiming without support that he was no longer the registered agent of HovSat and therefore service was improper.  (*See* Dkt. 59.)  However, Mr. Havinghorst did not follow proper procedure to withdraw as registered agent.  (*See* Dkt. #68, p. 2.)  Additionally, Mr. Havinghorst has *still* not withdrawn as the registered agent of HovSat, as indicated by the recent entity status report obtained from the New Jersey Secretary of State.  (*See* Trojan Decl. at ¶ 4, Ex. 1).

MOTION FOR DEFAULT JUDGMENT

Omniverse will be left with no recourse for their injuries caused by HovSat's fraudulent representations and failure to honor their agreements. *See Freligh v. Roc Asset Sols., LLC*, 2016 WL 3748723, at *4 (N.D. Cal. June 8, 2016) (slip copy), *report and recommendation adopted*, 2016 WL 3747616 (N.D. Cal. July 11, 2016) ("[P]rejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy."). Clearly, such an outcome would be severely prejudicial to Omniverse, and thus, this *Eitel* factor supports a default judgment against HovSat.

### 2. Merits of Omniverse's Substantive Claim and Sufficiency of the Third-Party Complaint

Omniverse has set forth well-pleaded allegations in their Third-Party Complaint, which has listed all the essential facts and elements as to each of the following causes of action against HovSat: (1) Breach of Contract; (2) Negligent Misrepresentation; (3) Fraudulent Misrepresentation; (4) Breach of Implied Warranty of Title and Against Infringement under UCC § 2-312; and (5) Breach of Implied Covenant of Good Faith and Fair Dealing under UCC § 1-304. As HovSat's failure to answer Omniverse's TPC constitutes an admission as to the allegations contained in the TPC, the Court must accept these allegations as true. *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Accordingly, the second and third *Eitel* factors, also favor entry of default judgment against HovSat.

### a. Breach of Contract (Count 2 of TPC)

With respect to Count 2, to prevail on a breach of contract claim, Omniverse must prove that (1) a contract exists, (2) plaintiff performance or plaintiff's nonperformance was excusable, (3) defendant breached the contract, and (4) the breach resulted in damages to plaintiff. *See E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp 3d 1012, 1015 (N.D. Cal. 2016).

MOTION FOR DEFAULT JUDGMENT

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

Omniverse's TPC properly alleges the necessary elements for a cause of action for breach of contract.  The TPC identifies the existence of a contract, namely, the JVA and CLA (together, the "Contract").  (*See* TPC, ¶¶ 11, 13, 16, 51-52.)  The TPC shows that Omniverse performed its obligations under the Contract, and therefore performed their part of the agreement.  (*See id.* at ¶¶ 20-26, 53-54.)  HovSat breached the Contract by not obtaining the proper licenses to distribute the copyrighted material and by fraudulently representing to Omniverse that HovSat did in fact license these rights.  (*See id.* at ¶¶ 27-30, 32-34, 55-56.)

Omniverse was clearly damaged as a result of this breach, including the $50,000,000 in liability to Plaintiffs for copyright infringement.  (*See id.* at ¶¶ 24, 57; *see also* Dkt. #63.)  Therefore, Omniverse has successfully proven that HovSat breached its Contract with Omniverse.

### b.    Negligent Misrepresentation (Count 3 of TPC)

With respect to Count 3, to prevail on a negligent misrepresentation claim, Omniverse must prove that HovSat (1) made a misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damages.  *See UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015) (*citing Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 243, 70 Cal.Rptr.3d 199 (2007*)*).

Here, Omniverse's TPC properly alleges sufficient facts to prove the elements of a negligent misrepresentation claim.  First, it is clear from the TPC that HovSat made a misrepresentation of a material fact, namely, that HovSat had acquired the proper copyright licenses from DirecTV to distribute the copyrighted content.  (*See* TPC, ¶¶ 13-14, 16, 19-25, 58-63.)  HovSat intended for Omniverse to rely upon the

MOTION FOR DEFAULT JUDGMENT

misrepresented material facts to induce Omniverse to enter into the Contract with HovSat, and make monthly payments for the licensing fees. (*See id.* at ¶¶ 13, 16, 20-25, 65-66.) Omniverse was justified in relying on this misrepresentation, as Omniverse and its investors communicated with HovSat and HovSat's owner on multiple occasions to confirm the existence of a valid license agreement between HovSat and DirecTV, to which HovSat repeatedly confirmed. (*See id.* at ¶¶ 27-30, 32-34, 67.)

Lastly, Omniverse was clearly damaged as a result of these misrepresentations in the form of the $50,000,000 in liability to Plaintiffs for copyright infringement. (*See id.* at ¶¶ 24, 67; *see also* Dkt. #63.) Thus, in light of these facts, Omniverse has successfully proven that HovSat made negligent misrepresentations to Omniverse, and default judgment on this count is therefore proper.

### c.   Fraudulent Misrepresentation (Count 4 of TPC)

With respect to Count 4, to prevail on a fraudulent misrepresentation claim, Omniverse must prove that HovSat made (1) a knowingly false representation or fraudulent omission, (2) an intent to deceive or induce reliance, (3) justifiable reliance by the plaintiff, and (4) resulting damages. *See UMG Recordings* at 1109; *see e.g. Small v. Fritz Cos., Inc*., 30 Cal.4th 167, 173, 132 Cal.Rptr.2d 490, 65 P.3d 1255 (2003) (stating that in California, fraud claims have five elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage"); *Croeni v. Goldstein*, 21 Cal.App.4th 754, 758, 26 Cal.Rptr.2d 412 (1994) ("To plead a cause of action for fraud the plaintiff must allege (1) a knowingly false representation by the defendant, (2) an intent to defraud or to induce reliance, (3) justifiable reliance, and (4) resulting damages").

MOTION FOR DEFAULT JUDGMENT

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
BEVERLY HILLS

Here, Omniverse's TPC properly alleges sufficient facts to prove the elements of a fraudulent misrepresentation claim.  First, it is clear that HovSat made a knowingly false representation regarding the alleged copyright license with DirecTV to distribute the copyrighted content.  (*See* TPC, ¶¶ 13-14, 16, 19-25, 68-72.)  This knowledge can be directly gleamed from HovSat's multiple communications to ensure the monthly licensing fee payments were made, together with the lack of any payments, distribution agreements, or any other contracts with DirecTV as represented by HovSat.  (*See id.* at ¶¶ 25, 34-35, 72.)

HovSat intended to deceive Omniverse and induce Omniverse into relying upon the fraudulent misrepresentations in order to induce Omniverse to enter into the Contract with HovSat, and make monthly payments for the licensing fees to HovSat.  (*See id.* at ¶¶ 13, 16, 20-25, 73-75.)   Omniverse was justified in relying on the fraudulent misrepresentations, as Omniverse and its investors communicated with HovSat and HovSat's owner on multiple occasions to confirm the existence of a valid license agreement between HovSat and DirecTV, to which HovSat repeatedly confirmed.  (*See id.* at ¶¶ 27-30, 32-34, 74-76.)

Lastly, Omniverse was clearly damaged as a result of HovSat's fraud in the form of the $50,000,000 in liability to Plaintiffs for copyright infringement.  (*See id.* at ¶¶ 24, 76; *see also* Dkt. #63.)  Thus, Omniverse has successfully proven that HovSat fraudulently misrepresented to Omniverse that it had acquired the proper distribution licenses for the copyrighted content.  Granting default judgment based upon HovSat's fraud is proper.

### d.      Breach of Implied Warranty of Title and Against Infringement (Count 5 of TPC)

With respect to Count 5, UCC § 2-312(1) states that subject to specific language excluding or modifying the implied warranty, "there is in a contract for sale

MOTION FOR DEFAULT JUDGMENT

-10-

a warranty by the seller that (a) the title conveyed shall be good, and its transfer of title rightful; and (b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has on knowledge." *See* UCC § 2-312(1).  UCC § 2-312(3) states, "Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like . . .."  UCC § 2-312(3).

Thus, to prove that HovSat breached the implied warranty of title and against infringement, Omniverse must prove that the goods or services delivered by HovSat were not free from any encumbrance which Omniverse at the time of contracting did not have knowledge of, and that the goods or services delivered were not free of a rightful claim of any third person by way of infringement.  *See generally* UCC § 2-312.

Here, Omniverse has properly alleged a breach of the implied warranty of title against infringement in its TPC.  Omniverse, through the Contract, purchased HovSat's appropriate licenses to lawfully re-market the content, which HovSat represented was properly licensed through licensing agreements with DirecTV.  (*See* TPC, ¶¶ 16, 19-31, 80.)  HovSat, as a cable operator company, was a merchant regularly dealing in the goods of the kind, namely, copyright content, licenses, and distribution of copyrighted content.  (*See id.* at ¶¶ 9, 81.)  Omniverse was sued for infringing the content HovSat sold to Omniverse.  (*See id.* at ¶¶ 31, 82.)    Thus, HovSat failed to deliver goods to Omniverse under the contract that were free of encumbrance and were free of a rightful claim of a third party by way of infringement. (*See id.* at ¶¶ 31, 85.)

Omniverse was damaged in the form of the $50,000,000 in liability to Plaintiffs for copyright infringement.  (*See id.* at ¶¶ 24, 86; *see also* Dkt. #63.)  Therefore, as

MOTION FOR DEFAULT JUDGMENT

TROJAN LAW OFFICES
BEVERLY HILLS

Omniverse has successfully proven that HovSat breached the implied warranty of title and against infringement.  Granting default judgment on this count is proper.

### e.     Breach of Implied Covenant of Good Faith and Fair Dealing (Count 6 of TPC)

With respect to Count 6, under UCC § 1-304, "Every contract . . . imposes an obligation of good faith in its performance and enforcement."  UCC § 1-304.  "The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits."  *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720, 171 P.3d 1082, 1086–87 (2007), *as modified* (Dec. 19, 2007).  Thus, Omniverse must prove that HovSat breached the implied promise by doing something to injure Omniverse's right to receive the benefits of the agreements between Omniverse and HovSat.

Here, it is clear from the TPC that HovSat breached the implied covenant of good faith and fair dealing by fraudulently misrepresenting to Omniverse that HovSat had acquired the proper distribution licenses for the copyrighted content, thus breaching the Contract.   Specifically, HovSat and Omniverse entered into the Contract, and thus HovSat owes Omniverse the implied duty of good faith and fair dealing contained in the Contract.  (*See* TPC, ¶¶ 9-17, 89-90.)  HovSat breached this implied promise by fraudulently misrepresenting that HovSat had properly and validly licensed the copyrighted content at issue in the above-captioned case.  (*See id.*, ¶¶ 16, 19-31, 91-92.)  This misrepresentation regarding the licensed content interfered with Omniverse's rights to receive the benefits of the Contract by misleading Omniverse regarding the validity and lawfulness of distributing the copyrighted content.  (*See id.*, ¶ 93.)

Omniverse suffered substantial damages as a result of HovSat's breach, including the $50,000,000 in liability to Plaintiffs for copyright infringement.  (*See*

TROJAN LAW OFFICES
BEVERLY HILLS

*id.* at ¶¶ 24, 97; *see also* Dkt. #63.)  Thus, granting default judgment as to this count is proper as well.

### 3.    Sum of Money at Stake

With respect to the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (citing *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002)).

Here, HovSat's false representations to Omniverse that HovSat had acquired licenses to provide copyrighted content resulted in damages of $50,000,000.  (*See* TPC at ¶¶24, 35-38, 97; *see also* Dkt. #63.)

Omniverse recognizes that Omniverse itself was not authorize to stream the copyrighted content.  (*See id.* at ¶ 22.)  Omniverse only provided the copyrighted content on the representation from HovSat that HovSat had the requisite licenses to provide the copyrighted content from DirecTV.  (*See id*. at ¶ 20.)  Absent these representations from HovSat, Omniverse would not have provided the copyrighted content without authorization from the rights holders, and Plaintiffs' lawsuit against Omniverse would have been unnecessary.  However, Omniverse is now liable for $50,000,000 to Plaintiffs (*see* Dkt. #63), and this substantial loss is directly attributable to HovSat's fraudulent conduct.

While Omniverse recognizes this sum of money is substantial, HovSat's fraudulent conduct was so severe and caused Omniverse such severe injury that Omniverse is entitled to this substantial monetary award.  Thus, this factor favors entering default judgment against HovSat.

### 4.    Possibility of Dispute Concerning Material Facts

As discussed above, upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.  *TeleVideo Sys., Inc.*,

TROJAN LAW OFFICES
Beverly Hills

MOTION FOR DEFAULT JUDGMENT

826 F.2d at 917-18.  Here, Omniverse's TPC provides well-pleaded arguments and claims alleging the facts necessary to establish each count.  Furthermore, the Court Clerk has entered default against HovSat. (Dkt. #70.)  Further, there is no dispute as to the material allegations of the TPC, and the likelihood that any genuine issue may exist is remote at best.  *See Philip Morris*, 219 F.R.D. at 500.  Thus, this factor weighs in favor for entry of default judgment against HovSat.

### 5.      Possibility of Excusable Neglect by HovSat

HovSat received notice of the TPC, and Omniverse mailed a copy of the Application for Entry of Default and supporting documents to HovSat's registered agent.  (*See* Dkt. #56; *see also* Trojan Decl. at ¶ 6.)  Further, HovSat's registered agent of process, Mr. Havinghorst, received and accepted proper service of the TPC on October 9, 2019.  (*See* Dkt. #56.)  Despite this notice, HovSat failed to answer the TPC, failed to request any form of extension, and failed to respond to Omniverse's Application for Entry of Default.  (*See* Trojan Decl. at ¶ 5.)  Additionally, Mr. Havinghorst's letter claiming he was not the registered agent of process was filed with the Court nearly two weeks *after* the deadline to answer the TPC, even though he had been on notice of the TPC for over a month.  (*See* Dkt. #59.)  Accordingly, there is little likelihood of excusable neglect in light of the fact that HovSat was given notice of the pending lawsuit by its registered agent accepting service, HovSat's registered agent failing to respond in any manner by the deadline to answer the TPC, and HovSat's registered agent's failure to timely claim he is not the registered agent.[1]  Thus, HovSat's default did not result from excusable neglect, but rather by choice.  Therefore, the sixth *Eitel* factor weighs in favor of entering default judgment against HovSat as well.

TROJAN LAW OFFICES
BEVERLY HILLS

---

[1] As discussed above and in Omniverse's Application for Entry of Default, Mr. Havinghorst is still the Registered Agent of HovSat, as Mr. Havinghorst failed to follow proper procedure for resigning as agent for HovSat.  (*See* Dkt. #68; *see also* Trojan Decl. at ¶ 4, Ex. 1.)

MOTION FOR DEFAULT JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
BEVERLY HILLS

## C.     Requested Remedies

Omniverse seeks damages in the amount of $50,000,000 as the amount of damages incurred as a result of the damages owed to Plaintiffs.  This remedy is proper as it is included and does not differ from the relief prayed for in the TPC.  *See Philip Morris*, 219 F.R.D. at 501; (*See also* TPC, pp. 18-19.)

### 1.     Omniverse is Entitled to Damages from HovSat Equaling the Amount of Judgment Entered Against Omniverse in the Above-Captioned Matter

Omniverse is entitled to damages from HovSat equaling the $50,000,000 judgment entered against Omniverse for Plaintiffs in the above-captioned case (*see* Dkt. #63) as damages for each of the Counts as follows.

Damages for breach of contract include direct damages.  *See Speirs v. BlueFire Ethanol Fuels, Inc.*, 243 Cal. App. 4th 969, 989 (2015).  Direct damages compensate for the value of the promised performance, and are typically expectation damages, measured by what it would take to put the non-breaching party in the same position it would have been had the breaching party not breached the contract.  *See id.*; *see also* Cal. Civ. Code § 3300 (West) ("For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.")

Damages for misrepresentation stem from damages sustained by the plaintiff which were proximately caused by the misrepresentation.  *See Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1226 (Ct. App. 1991).  For fraud, and as stated by the California Civil Code, "one who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage

MOTION FOR DEFAULT JUDGMENT

which he thereby suffers." Cal. Civ. Code § 1709 (West). Thus, the party making the misrepresentation will be liable for damages to the party to whom the misrepresentation as made in the amount of damages sustained as a result of reliance on that misrepresentation.

HovSat's misrepresentations and breach of contract substantially damaged Omniverse in the amount of a $50,000,000 judgment entered against Omniverse for copyright infringement in the above-captioned action. It was HovSat's fraudulent and negligent misrepresentations, claiming that it had obtained valid and lawful copyright licenses from DirecTV, that caused the $50,000,000 in damages to be awarded against Omniverse. (*See supra* at Section 2.B.c-d.) Had HovSat not made the misrepresentations regarding acquiring the distribution licenses for the copyrighted content, and thus not breached their contract with Omniverse, Omniverse would have never been subject to the above-caption lawsuit raised by Plaintiffs. It logically follows that HovSat's misrepresentations thus proximately and directly caused the $50,000,000 in damages suffered by Omniverse.

Furthermore, the expectation damages for HovSat's breach of contract would be the $50,000,000 in damages injured against Omniverse. This is the amount that would put Omniverse in the same position it would have been had HovSat not breached the contract, and is thus the proper measure of expectation damages. *See Speirs* at 989.

A Plaintiff is entitled to a single recovery for each distinct item of compensable damage supported by the evidence, regardless of the nature or number of legal theories advanced. *See Tavaglione v. Billings,* 4 Cal. 4th 1150, 1158 (1993), *as modified* (Apr. 28, 1993); *see also Slater v. Blackwood,* 15 Cal. 3d 791, 795 (1975) ("Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.") While each Count

MOTION FOR DEFAULT JUDGMENT

-16-

individually supports the injury to Omniverse of $50,000,000, Omniverse recognizes the $50,000,000 injury is a single injury resulting from each individual Count.  Thus, Omniverse only seeks damages in the amount of $50,000,000.

Therefore, the only way to make Omniverse whole again in light of HovSat's misrepresentations and breach of contract is to award Omniverse $50,000,000 for the damages incurred as a result of Plaintiffs' lawsuit against Omniverse.

## IV.    CONCLUSION

Based on the foregoing, Third-Party Plaintiff respectfully requests that this Court enter a default judgment in the amount of $50,000,000 against HovSat as the amount of the damages incurred as a result of judgment granted in favor of Plaintiffs in the above captioned action. (*See* Dkt. #63.)

Respectfully Submitted,

TROJAN LAW OFFICES

by

January 30, 2020                              /s/R. Joseph Trojan
                                             R. Joseph Trojan
                                             Attorneys for Defendants and Third-Party Plaintiff,
                                             Omniverse One World Television, Inc. and Jason M. DeMeo

BYRD CAMPBELL, P.A.

by

/s/Stephen D. Milbrath
Stephen D. Milbrath
Attorneys for Defendants and Third-Party Plaintiff,
Omniverse One World Television, Inc. and Jason M. DeMeo

MOTION FOR DEFAULT JUDGMENT

-17-

TROJAN LAW OFFICES
BEVERLY HILLS

# CERTIFICATE OF SERVICE

I am over the age of 18 years, employed in the County of Los Angeles, and not a party to the above entitled action. My business address is 9250 Wilshire Blvd., Suite 325, Beverly Hills, California 90212.

On January 30, 2020, I served:

**-THIRD-PARTY PLAINTIFF OMNIVERSE ONE WORLD TELEVISION, INC.'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST THIRD-PARTY DEFENDANT HOVSAT INC.;**
**-DECLARATION OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT;**
**-EXHIBIT 1 TO DECLARATIO OF R. JOSEPH TROJAN;**
**-MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT AGAINST HOVSAT;**
**-PROPOSED ORDER GRANTING DEFAULT JUDGMENT AGAINST HOVSAT;**
**PROPOSED JUDGMENT; and**
**-this PROOF OF SERVICE**

By transmitting to:

Arthur P. Havinghorst II ESQ., Registered Agent of HovSat, Inc.
c/o Safari Telecom, Inc.
1 South Corporate Drive
Riverdale, NJ 07457

[X] BY MAIL: I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service and Federal Express on the same day with postage thereon fully prepaid at Beverly Hills, California, in the ordinary course of business. I am aware that on the motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing shown on this proof of service.

[X] FEDERAL: I declare, under penalty of perjury under the laws of the United States that the foregoing is true and that I am employed in the office of a member of the bar of at whose direction the service was made.

TROJAN LAW OFFICES
BEVERLY HILLS

-

1    Executed on January 30, 2020, at Beverly Hills, California.

2

3                                                          Michiko Speier

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of January 2020, I caused to have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Rose Leda Ehler    dkt-filings@mto.com, cynthia.soden@mto.com, rose.ehler@mto.com

Melinda E LeMoine    loren.rives@mto.com, melinda.lemoine@mto.com

Usha Chilukuri Vance    aileen.beltran@mto.com, raphael.sepulveda@mto.com, usha.vance@mto.com

Anne K Conley    carol.jette@mto.com, anne.conley@mto.com

Glenn D Pomerantz    cherryl.tillotson@mto.com, glenn.pomerantz@mto.com

Mark R Yohalem    mark.yohalem@mto.com


TROJAN LAW OFFICES

by

/s/ R. Joseph Trojan
R. Joseph Trojan
9250 Wilshire Blvd.
Beverly Hills, CA
Attorney for Defendants and
 Third-Party Plaintiff,
OMNIVERSE ONE WORLD
TELEVISION, INC., and
JASON M. DEMEO

TROJAN LAW OFFICES
BEVERLY HILLS

-